SELECTMEN OF WEST SPRINGFIELD *vs.* MARY S. HOAR
(and a companion case[1]).

Hampden.   September 26, 1955. — November 30, 1955.

Present:   QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Pension.   Police.   Evidence,* Presumptions and burden of proof.

The presumption afforded by G. L. (Ter. Ed.) c. 32, § 94, as appearing in
St. 1951, c. 594, applied in the determination of a claim for an annuity
under § 89A, inserted by St. 1948, c. 552, as amended, by the widow
of a police officer who died of heart disease.   [259–260]

Mere failure to designate a medical board within thirty days after the
filing of an application for an annuity under G. L. (Ter. Ed.) c. 32,
§ 89A, inserted by St. 1948, c. 552, as amended, would not preclude a
subsequent designation of the board and action on the claim.   [260]

TWO BILLS IN EQUITY, filed in the Superior Court on
September 22, 1953.

The suits were reported by *Meagher,* J., without decision.
In this court the cases were submitted on briefs.

*Edward C. Peck, Jr.,* Town Counsel, for the plaintiffs.

*Patrick A. Doyle,* for the defendant Hoar.

*William J. Foley,* for the defendant McCarthy.

*Robert J. DeGiacomo & Reuben Goodman,* by leave of
court, submitted a brief as amici curiae.

QUA, C.J.   These two bills for declaratory decrees, both
brought in the Superior Court by the selectmen of West
Springfield as "the appropriate public authority" referred
to in G. L. (Ter. Ed.) c. 32, § 89A, inserted by St. 1948,
c. 552, and now most recently amended by St. 1952, c. 431,
§ 4, present the question whether the presumption defined
in G. L. (Ter. Ed.) c. 32, § 94, added by St. 1950, c. 551,
and as now appearing in St. 1951, c. 594, applies in in-
stances where an annuity is claimed under § 89A by the

_____
[1] The companion case is that of the same plaintiffs against Mary T.
McCarthy.

widow of a police officer who died of heart disease. Each defendant is the widow of such a police officer. Each case is reported without decision.

Section 89A, which is in effect in West Springfield, and under which each claim is made, is a long section containing many provisions, of which for the purposes of these cases it is necessary to quote only the following: "If an employee of the commonwealth, or of any political subdivision thereof is killed, or dies from injuries received, or dies as a natural and proximate result of undergoing a hazard peculiar to his employment, while in the performance of his duty . . . there shall . . . be paid . . . to the following dependents of such deceased person the following annuities: — To the widow . . . an annuity not exceeding fifteen hundred dollars a year . . . ." The required facts are to be proved to the satisfaction of the appropriate public authority as defined in the section, and there must be a certificate by a majority of a board of three physicians, to be designated as provided in the section within thirty days after the filing of an application, "that the death was the natural and proximate result of the said injury or hazard."

Section 94, which relates to the presumption, and which was originally enacted two years after § 89A, reads, so far as here material, as follows: "Notwithstanding the provisions of any general or special law to the contrary . . . any condition of impairment of health caused by hypertension or heart disease resulting in total or partial disability to a . . . permanent member of a police department . . . who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of such condition, shall be presumed to have been suffered in line of duty, unless the contrary be shown by competent evidence."

The position of the plaintiffs in substance is that § 94 refers only to "any condition of impairment of health" and to "total or partial disability" and contains no reference whatever to death; that a person must be alive to suffer impaired health or to suffer disability; and therefore

that the presumption is intended for the benefit of only living potential pensioners and is not intended for the benefit of dependent potential annuitants under § 89A. A literal reading of the two sections tends to support this position.

But there are other considerations tending in the opposite direction. The retirement laws do provide for allowances to dependents in the event of service connected death as well as for allowances to the living for service connected disabilities. See c. 32, § 9, as amended; § 71; § 89, as amended; § 89A, as amended. Inasmuch as § 94 relates only to a presumption that hypertension or heart disease is service connected, it would seem natural that the presumption should apply in cases of death from those causes as well as in cases of disability, especially as death would commonly be preceded by some period of impairment of health and disability, even if short. And in instances where the person disabled has actually been retired with the aid of the presumption and afterwards dies from the same hypertension or heart disease that brought about his retirement it would be an anomaly to require his dependents again to prove without the aid of the presumption that the hypertension or heart disease was service connected. Neither should the dependents of a person entitled to retirement but who has not been retired before his death stand in any different position from the dependents of one who has actually been retired before death overtakes him. See *Acford* v. *Auditor of Cambridge*, 300 Mass. 391, 395. When the presumption was first enacted as to firemen by St. 1950, c. 551, and when it was subsequently amended to include police officers by St. 1951, c. 594, the titles of the acts referred to the "accidental disability retirement law"; but any inference that because of the titles the presumption was intended to apply only to disability benefits and not to death benefits is greatly weakened by the further fact that the Legislature entitled c. 545 of the same year, 1951, "An Act making certain changes in the accidental disability provisions of the contributory retirement law," although the act made changes both in the disability benefits and in the death benefits.

· But if the foregoing considerations are not enough in themselves to point to a broader application of the presumption than the literal reading of § 94 would seem to indicate, the Legislature itself appears to have construed the presumption as applicable to claims for death benefits by passing c. 493 of the acts of 1952. This act provided that the presumption should apply in the instance of one DiSessa, a police officer of Boston, who died on November 3, 1951, from a heart attack occurring on the same day. This was three days before St. 1951, c. 594, which extended the presumption to police officers, took effect. The Legislature cannot have supposed that only the dependents of DiSessa would benefit from the presumption. The special provision in his case can be explained only on the theory that the Legislature deemed it a hardship that his dependents could not have the benefit of a presumption that would have been available to them if he had died three days later.

We are of opinion that the presumption of § 94 is applicable in each case.

It is immaterial that the medical board required by § 89A was not designated within the thirty days there mentioned. Such board must now be designated. *Smith* v. *Director of Civil Service*, 324 Mass. 455, 458–459, and cases cited.

In each case a final decree is to be entered in accordance with this opinion.

*So ordered.*