MILDRED F. MATHEWSON, administratrix, *vs.* CONTRIB-
UTORY RETIREMENT APPEAL BOARD.

Suffolk. February 5, 1957. — March 29, 1957.

Present: WILKINS, C.J., SPALDING, COUNIHAN, & CUTTER, JJ.

*Retirement. Fireman. Evidence,* Presumptions and burden of proof.
  *Proximate Cause. Certiorari. State Administrative Procedure Act.*

A medical panel in making a certificate to a retirement board under G. L.
  (Ter. Ed.) c. 32, § 6 (3) (a), as appearing in St. 1945, c. 658, § 1, as
  amended by St. 1946, c. 603, § 2, and St. 1947, c. 388, § 7, upon an
  application for disability retirement is not required to state evidence.
  [615]
The requirement of G. L. (Ter. Ed.) c. 32, § 6 (3) (a), as appearing in
  St. 1945, c. 658, § 1, as amended by St. 1946, c. 603, § 2, and St. 1947,
  c. 388, § 7, that no member of a retirement system shall be retired for
  disability unless the medical panel certifies to the retirement board
  that "such member is mentally or physically incapacitated for further
  duty and that such incapacity is likely .to be permanent" remained
  applicable in cases involving retirement for accidental disability be-
  cause of hypertension or heart disease after the enactment of § 94,
  added by St. 1950, c. 551. [615]
G. L. (Ter. Ed.) c. 32, § 94, added by St. 1950, c. 551, as appearing in
  St. 1951, c. 594, eliminated, as a condition precedent to the granting
  by a retirement board of an accidental disability retirement allowance
  under § 7 (1), as appearing in St. 1945, c. 658, § 1, to a member of a
  retirement system disabled by reason of hypertension or heart disease,
  a certification by the medical panel to the effect that the disability is
  service connected, and the board in such a case may find that the
  disability is service connected on the basis of the presumption af-
  forded by § 94. [615–616]
By reason of the State administrative procedure act, G. L. (Ter. Ed.)
  c. 30A, inserted by St. 1954, c. 681, § 1, certiorari no longer lies to
  review a final decision of the contributory retirement appeal board
  under c. 32, § 16 (4), as appearing in St. 1945, c. 658, § 1. [616]

PETITION for a writ of certiorari, filed in the Supreme
Judicial Court for the county of Suffolk on January 24, 1956.
  The case was heard by *Williams,* J.
  *George W. McLaughlin,* for the petitioner.

*Matthew S. Heaphy*, Assistant Attorney General, for the respondent.

*Robert J. DeGiacomo*, by leave of court submitted a brief as amicus curiae.

WILKINS, C.J.   On May 3, 1955, Edward B. Mathewson, a uniformed, paid member of the fire department of Cohasset and a member of the Norfolk County retirement system, applied for an accidental disability retirement allowance. G. L. (Ter. Ed.) c. 32, § 7, as appearing in St. 1945, c. 658, § 1, as amended.   From a denial of his application by the Norfolk County retirement board he appealed to the respondent contributory retirement appeal board (which we shall call the appeal board), G. L. (Ter. Ed.) c. 32, § 16 (4), as so appearing, as amended.   The appeal board affirmed the decision of the county board.   Upon this petition for a writ of certiorari to quash the action of the appeal board, judgment was entered dismissing the petition.   The petitioner appealed.   G. L. (Ter. Ed.) c. 213, § 1D, inserted by St. 1943, c. 374, § 4.   After his death his administratrix was substituted as party petitioner.

Except for procedure, the important question for decision is the effect the presumption that hypertension or heart disease is service connected, as defined by G. L. (Ter. Ed.) c. 32, § 94, added by St. 1950, c. 551, as appearing in St. 1951, c. 594, has upon earlier enacted provisions of the accidental disability retirement statute, namely, G. L. (Ter. Ed.) c. 32, § 7 (1), as appearing in St. 1945, c. 658, § 1;[1] and § 6 (3) (a) as so appearing, as amended by St. 1946, c. 603, § 2, and St. 1947, c. 388, § 7.[1]

From the return of the appeal board it appears that at the time of his application for the allowance in 1955 the petitioner was sixty-three years of age.   He was examined by a medical panel of three physicians pursuant to G. L. (Ter. Ed.) c. 32, § 6, as appearing in St. 1945, c. 658, § 1, as amended.   A majority of the panel found that he was suffering from "hypertensive arteriosclerotic heart disease, aortic

---

[1] Subsequent amendments are immaterial.

stenosis, myocardial infarction, by history"; that he was "mentally or physically incapacitated for further duty in his present position"; that his "disability is likely to be permanent"; and that "the disability . . . is not the natural and proximate result of the accident or hazard undergone on account of which the retirement is claimed." In a minority report Dr. Reid, who was his attending physician, stated that in his opinion the disability was "service connected." He relied upon a history given by the petitioner of two episodes (1) shortness of breath following a fall upon the ice in front of the fire house on February 1, 1954, and (2) being obliged to make a rapid transfer of fire fighting equipment from a stalled fire truck he was driving to a fire on January 1, 1955, which preceded a heart attack two weeks later.

On July 7, 1955, the county board voted: "Inasmuch as a majority of the medical panel stated that in their opinion . . . the disability is not the natural and proximate result of the accident or hazard undergone on account of which the retirement is claimed, it was unanimously voted to deny Mr. Edward B. Mathewson's request for an accidental disability allowance."

On December 16, 1955, the appeal board promulgated its decision, stating that it "does not consider that Edward B. Mathewson is entitled to be retired, on the record, on his application for accidental disability retirement."

Pertinent provisions relating to accidental disability retirement are found in G. L. (Ter. Ed.) c. 32, entitled "Retirement Systems and Pensions." "Any member . . . who becomes totally and permanently incapacitated for further duty . . . by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties at some definite place and at some definite time . . . upon his written application on a prescribed form filed with the [appropriate retirement (§ 1)] board . . . shall be retired for accidental disability as of a date which shall be specified in such application . . . . No such retirement shall be allowed unless the board, after such proof as it may require, including in any event an examina-

tion by the medical panel provided for in subdivision (3) of section six and including a certification of such incapacity by a majority of the physicians on such medical panel, shall find that such member is mentally or physically incapacitated for further duty to the extent and under the circumstances set forth in this section, that such incapacity is likely to be permanent, and that he should be so retired" (§ 7 [1], as appearing in St. 1945, c. 658, § 1). "No member shall be retired for disability under the provisions of this section or of section seven unless he has first been examined by a medical panel and unless a majority of the physicians on such medical panel shall, after such examination and after a review of all of the pertinent facts in the case, certify to the board in writing that such member is mentally or physically incapacitated for further duty and that such incapacity is likely to be permanent, and, in any case involving a retirement under section seven, the panel shall further state whether or not the disability is such as might be the natural and proximate result of the accident or hazard undergone on account of which such retirement is claimed under said section" (§ 6 [3] [a], as appearing in St. 1945, c. 658, § 1, as amended by St. 1946, c. 603, § 2, and St. 1947, c. 388, § 7).

In *Hunt* v. *Contributory Retirement Appeal Board,* 332 Mass. 625, which was not a hypertension or heart disease case, we held that a retirement board acting under § 7 cannot allow a retirement for accidental disability unless there is before it, as a condition precedent to its finding, "a certification of such incapacity by a majority of the physicians" on the medical panel (page 627). The phrase "such incapacity" in § 7 must refer to the earlier part of that section where the right to apply for this kind of retirement is conferred upon a member "who becomes totally and permanently incapacitated . . . by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties." Under § 6 (3) (a) the medical panel must state whether the disability "might be the natural and proximate result of the accident or hazard

undergone." In two cases where the presumption defined in § 94 did not apply, we have said that the certification of the medical panel was not binding on the county board, which is to decide the case on all the evidence. *Cassier* v. *Contributory Retirement Appeal Board*, 332 Mass. 237, 240n. *Hunt* v. *Contributory Retirement Appeal Board*, 332 Mass. 625, 627. This statement must mean that in such cases the county board cannot allow an accidental disability retirement application in the absence of the "certification of such incapacity," but the board is not required to follow it when the board has it.

We turn to a consideration of § 94 added by St. 1950, c. 551, as appearing in St. 1951, c. 594, which provides: "Notwithstanding the provisions of any general or special law to the contrary . . . any condition of impairment of health caused by hypertension or heart disease resulting in total or partial disability to a uniformed member of a paid fire department . . . who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of such condition, shall be presumed to have been suffered in line of duty, unless the contrary be shown by competent evidence."

The opening phrase of § 94 invites litigation. The words, "Notwithstanding the provisions of any general or special law to the contrary," announce that an indefinite number of unidentified statutory provisions, if inconsistent, are repealed to the extent necessary to make § 94 effective. The only method of identifying inconsistent provisions and of determining the extent of their repeal lies in resort to the courts.

In meeting the problem of fitting § 94 into the statutes we are aided by various rules in the nature of axioms. Some meaning, if possible, must be given the later legislation. In its enactment the Legislature presumably knew the existing statute and common law. All the statutes must be construed, where capable, so as to constitute a harmonious whole consistent with the legislative purpose disclosed in the new act. Such purpose is to be gleaned from the reasons,

where ascertainable, leading to the legislation, from the nature of the subject matter, from the supposed evil to be corrected, and from the objective sought to be attained.

In *Selectmen of West Springfield* v. *Hoar*, 333 Mass. 257, we held that § 94 was pertinent to an application for an annuity made under § 89A by widows of police officers who died of heart disease. In so doing we relied upon the construction that § 94 embraced applications for an accidental disability retirement allowance made under § 7 by a living member. In *Hough* v. *Contributory Retirement Appeal Board*, 309 Mass. 534, 538–540, there is a discussion of the burden resting upon the member of a retirement system in trying to show that a disease or an impairment of health exists "by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties at some definite place and some definite time."

No one presently contends that § 94 has anything to do with the functions of a medical panel in making a certificate of incapacity based upon its examination. The petitioner, however, does argue that "the evidence from the panel must be such as to enable the local board to apply the presumption in making its decision as required by the provisions of § 94." The medical panel, however, is not charged with the duty to provide statements of any evidence. Its function is fully performed by making a certification, which will be in itself in the nature of evidence before the local retirement board, and where unfavorable would be sufficient to rebut the presumption.

The real question is the subject matter of the certification which the medical panel must make upon the application of a member who alleges that his hypertension or heart disease is service connected. We have seen that upon all applications the medical panel must certify that the "member is mentally or physically incapacitated for further duty and that such incapacity is likely to be permanent." We are of opinion that this requirement is still applicable in hypertension or heart disease cases. Beyond this, however, it is our opinion that as a result of § 94 the further requirement that the

medical panel certify "whether or not the disability is such as might be the natural and proximate result of the accident or hazard undergone" no longer applies as a condition precedent to hypertension or heart disease cases. Since this requirement ceases to be a part of the condition precedent to granting a retirement allowance by the local board, there is ample opportunity for application of the presumption in the proceedings before that board.

Obviously, this was not the course taken by the county board, which regarded the negative certificate of the medical panel as conclusive. There, accordingly, was error in its action, which should have been corrected by the appeal board.

It does not follow that there was error in the dismissal of the petition for writ of certiorari. The case falls within the provisions of the State administrative procedure act. G. L. (Ter. Ed.) c. 30A, inserted by St. 1954, c. 681, § 1. These were adjudicatory proceedings (§ 1 [1]). The contributory retirement appeal board is an agency rendering a final decision [1] in adjudicatory proceedings and is not within any exception in § 1 (2). The case is one where, before the passage of c. 30A, no "provision of law expressly precludes judicial review" and "the only statutory form of review is by extraordinary writ" (§ 14). See *Hayeck* v. *Metropolitan District Commission*, ante, 372. A petition for writ of certiorari will no longer lie to review proceedings like these.

We have considered the case on the merits in accordance with the preference of the parties, because the issues are of public importance and have been fully argued.

*Judgment affirmed.*

---

[1] G. L. (Ter. Ed.) c. 32, § 16 (4), as appearing in St. 1945, c. 658, § 1.