JAMES GANNON *vs.* CONTRIBUTORY RETIREMENT APPEAL BOARD.

Middlesex. December 4, 1958. — March 6, 1959.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Retirement. Workmen's Compensation Act,* Lump sum settlement. *Certiorari. State Administrative Procedure Act.*

A mandamus proceeding commenced in 1954, in which a motion to amend the petition to a petition for a writ of certiorari had been filed before the State administrative procedure act, G. L. c. 30A, took effect on July 1, 1955, was "pending in a court" on that date within St. 1954, c. 681, § 22, and upon allowance of the motion thereafter could be entertained as a certiorari proceeding. [629]

An employee of the housing authority of a city, who was a member in service in good standing of the city's contributory retirement system when injured while at work and who after hospitalization and return to work was discharged by the authority because of inability to perform his duties and subsequently was paid a substantial amount in a lump sum settlement by the authority's insurer under § 48 of the workmen's compensation act, G. L. c. 152, and then, at a time when the period referred to in § 14 (1) (a) of c. 32, determined as set forth in (c), had not expired, applied for retirement under c. 32 by reason of accidental disability, was, under § 14 (1) (a), entitled to a "potential retirement allowance" within § 3 (1) (a) (ii) both at the time of his discharge and at the time of his application for retirement, and by virtue of such provisions of c. 32 read with § 3 (1) (c) had the status necessary to support and require processing of his application for that allowance, notwithstanding that he had ceased to be a "member in service" within § 3 (1) (a) (i). [632]

Gannon v. Contributory Retirement Appeal Board.

G. L. c. 32 is not to be so construed that a right of a member of a retirement system to retire for accidental disability may be cut off by his employer by a decision to discharge him because of his disability rather than to give him a leave of absence without pay as contemplated by § 3 (1) (a) (i) or to invoke the retirement procedure set forth in § 16. [633]

Retirement rights under G. L. c. 32 of a member of a retirement system are not affected by the fact he is not a civil service employee and is subject to discharge at any time. [633]

An agreement on a form of the department of industrial accidents between an employee of the housing authority of a city and the authority's insurer under the workmen's compensation act, reciting that the payment of a substantial amount to the employee was "in redemption of the liability for all weekly payments now or in the future due . . . [the employee] under the workmen's compensation act, for all injuries received" on a certain day while at work was a redemption of the insurer's liability within G. L. c. 152, § 48, and a "lump sum settlement" within G. L. c. 32, § 14 (1) (a), even though the agreement was initiated by the employee and the insurer and was subsequently approved by the department. [633-634]

Authorization for an insurer under the workmen's compensation act and an injured employee to enter into a lump sum settlement in redemption of the insurer's liability for compensation is in G. L. c. 152, § 48, and not in § 6. [634]

PETITION, filed in the Superior Court on December 13, 1954.

The case was heard by Lurie, J.

John F. Donohoe, for the petitioner.

Matthew S. Heaphy, Assistant Attorney General, for the respondent.

WHITTEMORE, J. This is an appeal from a final judgment dismissing a petition for a writ of certiorari (G. L. c. 213, § 1D). The petition as filed on December 13, 1954, sought a writ of mandamus. A motion to amend the petition into its present form was filed February 9, 1955, and allowed July 18, 1955. The proceedings were "pending in a court" when the State administrative procedure act (G. L. c. 30A) took effect on July 1, 1955, and the petition may be entertained. St. 1954, c. 681, § 22. Compare Mathewson v. Contributory Retirement Appeal Bd. 335 Mass. 610, 616.

The issue is the validity of the decision of the contributory retirement appeal board which confirmed a decision of the retirement board of the city of Lowell not to retain or process

the petitioner's application for retirement for accidental disability under G. L. c. 32, §§ 1–28, inclusive, on the ground that when the application was filed the petitioner was not a "member in service" under the act, having previously been discharged.

The following are the relevant facts: The petitioner on June 24, 1952, was an employee of the Lowell Housing Authority (having been hired December 31, 1951) and was a member in service in good standing of the city's contributory retirement system. On June 24 the petitioner, while at work, was taken ill and went to the hospital. He remained there until July 2. The petitioner returned to work on September 22, 1952, and on that date sent the board a letter notifying it of his illness ("heat prostration which resulted in a coronary heart attack") and that his doctor told him "he could return to his job if he was given light work" and that he returned to it on September 22.

On October 1, 1952, while still actively employed by the housing authority the petitioner filed a claim for compensation under the workmen's compensation act (G. L. c. 152) for the injuries sustained on June 24, 1952. The Lowell Housing Authority on November 5, 1952, ended the petitioner's employment because of his inability to perform his duties and on November 21, 1952, notified the board of the petitioner's "separation from service" because "[u]nable to perform duties of Fireman due to recent illness." On April 17, 1953, the petitioner and the insurer of the housing authority entered into an agreement for a lump sum settlement of the petitioner's claim in the amount of $5,750. The agreement was on a form of the department (now "division," see St. 1953, c. 314) of industrial accidents, entitled "Agreement for Redeeming Liability by Payment of Lump Sum," and recited that the payment was "in redemption of the liability for all weekly payments now or in the future due me under the workmen's compensation act, for all injuries received . . . on or about the 24th day of June 1952, while in the employ of the above named employer . . . ." The approval of the department was indorsed on the agreement

on April 21, 1953, and by letter of April 23 the department notified the parties of the approval and directed the payment of stated medical bills and an attorney's fee. The application for retirement was filed on May 27, 1953. On June 25, 1953, the retirement board voted "that the application of the petitioner be given leave to withdraw."

Section 3 of c. 32 in subsections (1) (a) (i) and (ii) [1] provides for two kinds of "[m]embership in a system." Paragraph (i) defines "[m]ember in [s]ervice" as a member "regularly employed" or on leave of absence with pay or without pay if "due to his mental or physical incapacity for duty," and provides that such status continues "until his prior separation from the service becomes effective by reason of . . . [various contingencies including] discharge . . . ." Paragraph (ii) defines "[m]ember [i]nactive" to include "any member in service whose employment has been terminated and who may be entitled to any present or *potential retirement allowance* or to a return of his accumulated total deductions . . ." (emphasis supplied).

Section 3 (1) (c) provides, "No description of a person having any rights or privileges under the provisions of sections one to twenty-eight inclusive, such as member in service, member inactive, beneficiary or otherwise, shall serve to deprive him of any such rights or privileges. A

---

[1] "(i) Member in Service. — Any member who is regularly employed in the performance of his duties, except a member retired for disability who upon partial recovery is restored to active service as provided for in paragraph (2) (a) of section eight. Any member in service shall continue as such during any period of authorized leave of absence with pay or during any period of authorized leave of absence without pay if such leave is due to his mental or physical incapacity for duty. In any event the status of a member in service shall continue as such until his death or until his prior separation from the service becomes effective by reason of his retirement, resignation, failure of re-election or reappointment, removal or discharge from his office or position, or by reason of an authorized leave of absence without pay other than as provided for in this clause. Any member in service shall have full voting powers in the system as provided for in section twenty.

"(ii) Member Inactive. — Any member in service who has been retired and who is receiving a retirement allowance, any member in service whose employment has been terminated and who may be entitled to any present or potential retirement allowance or to a return of his accumulated total deductions under the provisions of sections one to twenty-eight inclusive, or any member in service who is on an authorized leave of absence without pay other than as provided for in clause (i) of this paragraph. No member inactive shall have any voting rights in the system."

member shall retain his membership in the system so long as he is living and entitled to any present or potential benefit therein.".

We think that § 14 (1) (a) of c. 32 establishes that at the time of his discharge on November 5, 1952, and at the time of the application on May 27, 1953, the petitioner was entitled to a "potential retirement allowance," and that § 14 read with §§ 3 (1) (a) (ii) and 3 (1) (c) shows an intent that a former employee, so entitled, shall have whatever status is necessary to permit him to make application for that allowance notwithstanding that in the meantime he has ceased to be a "member in service" within the provisions of § 3 (1) (a) (i).

Section 14 (1) (a) of c. 32 provides in its first paragraph: "Any employee *who was a member in service at the time of sustaining an injury or undergoing a hazard* on account of which he becomes entitled to payments under the provisions of chapter one hundred and fifty-two, *shall*, during the period while he is receiving weekly payments for total incapacity under the provisions of sections sixty-nine to seventy-five inclusive of such chapter, or during any period, determined as set forth in paragraph (c) of this subdivision, represented by the allocation of the amount of any lump sum settlement payable directly to him under the provisions of section forty-eight of such chapter in lieu of such weekly payments, and also in either event during a further period of thirty days, *retain all the rights of a member in service* while he is living, *unless and until a retirement allowance becomes effective for him* under the provisions of sections one to twenty-eight inclusive" (emphasis supplied). The additional provisions of the paragraph and subsequent paragraphs of § 14 confirm the declared intent that the rights of an injured member in service be retained in the compensation period.[1]

---

[1] Section 14 (1) (a) continues: "During such periods, however, no such member shall make any payments into the annuity savings fund of the system nor shall he withdraw his accumulated total deductions therefrom. Any such member shall have credited to him as creditable service under the system the period during which he is receiving such weekly payments or lump sum settlement in lieu of such weekly payments. The board of each system shall keep

We think that c. 32 is not to be so construed that a right of retirement for accidental injury may be cut off by the employer by a decision to discharge the employee because of his disability, rather than to give him leave of absence without pay as contemplated by § 3 (1) (a) (i) or to move to retire him under the option so to do given the department head by § 16. We find no basis for such an arbitrary result. Discharge prior to the accrual of a right under § 14 would present a different case. See *Kennedy* v. *Holyoke*, 312 Mass. 248, 250 (discharge for misconduct prior to purported retirement under § 57 which authorized retirement of a veteran from "active service").

The petitioner has no less rights under c. 32 because, not being a civil service employee, he was subject to discharge at any time.

The board in its decision stated the view, and argues here, that the "lump sum settlement did not constitute any part of an allocation of an amount in lieu of weekly payments . . . [under c. 152], but rather appeared to be the payment of a sum by way of compromise of the action without an admission of liability on the part of the insurer." We disagree. Section 48 of c. 152 provided in April, 1953, that "Whenever the department deems it to be for the best interests of the employee or his dependents, and the parties agree, the liability for compensation may be redeemed by the payment in whole or in part by the insurer of a lump sum of an amount to be fixed by the department, not exceeding the amount provided by this chapter. The department, in the case of a minor who has received permanently dis-

---

an annual record of all such creditable service. At the time of his retirement, or as soon thereafter as an appropriation therefor is made, the commonwealth or political subdivision thereof, as the case may be, shall pay into the annuity savings fund of such system the amount which said person would have paid into said fund had his employment in the service of the commonwealth or political subdivision thereof not been interrupted by his industrial accident, but in no event more than would be credited to him if regular deductions were made on his full salary or wages . . . ."

Section 14 (2) (a) of c. 32 provides that sums received under c. 152 shall be offset against and payable in lieu of pensions payable under the provisions of § 6, 7 (accidental disability), or 9. Section 14 (2) (c) provides that if a member entitled to a pension and also having a right under c. 152 fails to prosecute such right the board may suspend the pension payments.

abling injuries, either partial or total, may, at any time before or after he attains his majority, provide that he be compensated in whole or in part by the payment of a lump sum, of an amount to be fixed by the department, not exceeding the amount provided by this chapter."

The settlement agreement expressly recited, as the statute contemplates, that the payment was "in redemption of the liability for all weekly payments . . . ." We think that this was no less a redemption of liability under § 48 because initiated by the parties and subsequently approved by the department. See *Silva's Case*, 305 Mass. 380, 381.

There is no right to compromise the liability for weekly payments except under the act. *Conlon* v. *Lawrence*, 299 Mass. 528, 531.

Section 6 of c. 152 provided that if "the insurer and the injured employee reach an agreement in regard to compensation, a memorandum thereof shall be filed with the department, and, if approved by it, the memorandum shall for all purposes be enforceable under section eleven . . . ." Our cases show the use of this section to support agreements as to weekly compensation. *Perkins's Case*, 278 Mass. 294, 298–299. *MacKinnon's Case*, 286 Mass. 37–38. *Miller* v. *Richards*, 305 Mass. 424, 425. *West's Case*, 313 Mass. 146, 153. *Brophy's Case*, 327 Mass. 557, 559. Other cases which deal with a lump sum settlement refer either to both § 6 and § 48 or only to § 48. See *Conlon* v. *Lawrence*, 299 Mass. 528, 532; *Silva's Case*, 305 Mass. 380, 381. Authorization of a lump sum settlement is in § 48 and not in § 6 apart from § 48. *McCarthy's Case*, 226 Mass. 444, was decided under the predecessor of § 48 (St. 1911, c. 751, Part II, § 22, as amended by St. 1914, c. 708, § 8) which required as a condition of a lump sum settlement that the weekly payments have continued for not less than six months and that the department be satisfied that the case was unusual. We said (p. 446), "In an ordinary case the liability . . . cannot be redeemed by a lump sum settlement." The parties to the settlement agreement acted under c. 152, § 48, and c. 32, § 14 (1) (a), was applicable.

It is apparent from the amount of the lump sum settlement and the provisions of G. L. c. 152, §§ 34 and 35A, and c. 32, § 14 (1) (c), that the period prescribed by c. 32, § 14 (1) (a), during which the employee retained "all the rights of a member in service" had not expired on May 27, 1953, when the retirement application was filed. The application is to be accepted by the Lowell retirement board under c. 32, § 7 (1), and the board is to proceed under the applicable provision to determine whether the requested retirement may be allowed.

The judgment is reversed. Judgment is to enter in the Superior Court in accordance herewith.

*So ordered.*