MARGARET D. MCLEAN vs. CITY OF MEDFORD.

Middlesex.    February 3, 1960. — March 31, 1960.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

*Pension. Police. Evidence*, Presumptions and burden of proof.

The widow of a police officer of a city who died of a coronary occlusion
about two years after his retirement from the service for "myocarditis,
a heart disease, of undetermined origin," was not entitled to maintain
an action against the city to recover an annuity under G. L. c. 32, § 89A,
as amended through St. 1952, c. 431, § 4, where it appeared that the
"appropriate public authority," the city manager and city council, had
not satisfied the statutory requirements for payment of the annuity by
determining that the death of the officer was the "natural and proxi-
mate result of an accident occurring," or of undergoing a "hazard"
peculiar to his employment, "while he was acting in the performance
and within the scope of his duty," and by determining the amount of
the annuity; c. 32, § 94, as appearing in St. 1951, c. 594, did not elimi-
nate the necessity of such determinations.   [616]
G. L. c. 32, § 94, as appearing in St. 1951, c. 594, did not create a presump-
tion that heart disease which caused the death of a former police officer
was the same heart disease as that which had brought about his retire-
ment about two years previously.   [616]
By reason of G. L. c. 32, § 94, as appearing in St. 1951, c. 594, a certifica-
tion by a medical board to the effect that heart disease of which a mem-
ber of a police department died was service connected became no longer
a condition precedent to the granting of an annuity under c. 32, § 89A,
as amended through St. 1952, c. 431, § 4, to his widow, but § 94 did
not eliminate the necessity of a proper certificate by the medical board
reflecting the evidence on the issues before it and stating its findings
thereon, and in itself in the nature of evidence upon which the "appro-
priate public authority" could act.   [616–617]
In a proceeding for an annuity under G. L. c. 32, § 89A, as amended
through St. 1952, c. 431, § 4, by the widow of a police officer of a city
who died about two years after his retirement from the service, a cer-
tificate by a medical board stating merely that the "past history" of
the deceased "indicated that he was . . . certified for retirement . . .
because of a myocarditis of undetermined origin," that he died "with
the certified diagnosis of coronary occlusion," and that the board did
"not find any evidence to indicate that the deceased . . . died as a re-
sult of an injury received in the performance of his duty," was ambig-

uous and inadequate in view of the presumption created by c. 32, § 94, as appearing in St. 1951, c. 594. [617]

A certificate by a medical board under G. L. c. 32, § 89A, as amended through St. 1952, c. 431, § 4, that a police officer was "certified for retirement . . . because of a myocarditis of undetermined origin" and died about two years later "with the certified diagnosis of coronary occlusion" would not warrant an inference that the disease for which he was retired and the disease of which he died were not the same. [618]

CONTRACT. Writ in the First District Court of Eastern Middlesex dated March 11, 1958.

Upon removal to the Superior Court the action was heard by *Rome, J.*

*Mark E. Gallagher, Jr.,* City Solicitor, (*Daniel F. Riley,* Assistant City Solicitor, with him,) for the defendant.

*Edward J. Bushell,* for the plaintiff.

WHITTEMORE, J. In this action of contract tried by a judge in the Superior Court on an auditor's report, the widow of a retired police officer of the city of Medford, who died June 5, 1954, seeks to recover as damages for the wrongful refusal to award an annuity, with dependent's allowance, under G. L. c. 32, § 89A,[1] the amount which would have been due from January 7 to March 11, 1958, based on an

---

[1] General Laws c. 32, § 89A, as amended through St. 1952, c. 431, § 4, provided in part: "If an employee . . . of any political subdivision . . . dies from injuries received, or dies as a natural and proximate result of undergoing a hazard peculiar to his employment, while in the performance of his duty, and it shall be proved to the satisfaction of the appropriate public authority . . . that such death was the natural and proximate result of an accident occurring, or of undergoing . . . [such] hazard . . . while he was acting in the performance and within the scope of his duty, and a majority of the members of a board consisting of . . . [physicians, appointed as prescribed] certify to the treasurer of the body politic . . . that the death was the natural and proximate result of the said injury or hazard, there shall, except as hereinafter provided, be paid out of the treasury of such body politic . . . to the following dependents . . . the following annuities: — To the widow . . . an annuity *not exceeding* [emphasis supplied] fifteen hundred dollars a year, increased by not exceeding three hundred and twelve dollars for each child . . . and, . . . [limited alternative provisions for children, father, mother and unmarried or widowed sister of the deceased if there is no widow, or she dies or remarries]. The total amount of all such annuities shall not, except as hereinafter provided, exceed the annual rate of compensation received by such deceased person at the date of his death if such annual rate of compensation was more than fifteen hundred dollars. . . . The amount of any such annuity shall from time to time be determined within the limits aforesaid by the appropriate public authority as hereinafter defined. . . . The words 'appropriate public authority' as used in this section, shall mean, . . . as to a city, the mayor and city council . . . ." Statute 1956, c. 666, § 2, substituted "of" for the words "not exceeding" underlined above.

annuity of $1,500 with dependent's allowance of $312 per year. The defendant has excepted to an order for judgment for the plaintiff in the amount claimed and to the denial of requests for rulings.

The auditor found these facts: The deceased died June 5, 1954, of a coronary occlusion, that is, "a constriction or obstruction to a coronary vessel or artery to the heart resulting in infarction (death to the muscle tissues and cells) . . . [which]. is a heart disease." The deceased had been retired on May 7, 1952, for "myocarditis, a heart disease, of undetermined origin" after suffering a heart attack on April 21, 1952. His retirement was in accordance with the provisions of G. L. c. 32, with the benefit of § 94.[2] The plaintiff's application for an annuity was placed on file by the Medford city council on November 29, 1955. The plaintiff then successfully petitioned the Superior Court for a writ of mandamus which ordered the city manager (G. L. c. 43, § 104) and council to appoint a medical board to process her application in accordance with § 89A. The ensuing report of a medical board stated that they "met . . . and reviewed the past history" of the deceased which "indicated that he was originally certified for retirement . . . because of a myocarditis of undetermined origin . . . [and that he] expired on June 5, 1954, with the certified diagnosis of coronary occlusion — ½ hour. The medical panel does not find any evidence to indicate that the deceased . . . died as a result of an injury received in the performance of his duty as a member of the police department of the city of Medford." The city manager declined to grant an annuity and sent a copy of the report to the city council with the statement that he had acted in view of the "panel's" (medical board's) findings. The city council placed the re-

---

[2] This section prior to amendments in 1956 read: "Notwithstanding the provisions of any general or special law to the contrary . . . any condition of impairment of health caused by hypertension or heart disease resulting in total or partial disability to a . . . permanent member of a police department . . . who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of such condition, shall be presumed to have been suffered in line of duty, unless the contrary be shown by competent evidence."

port on file.  The city "has refused to pay an annuity to the plaintiff."  The auditor found for the defendant.

Where the statutory requirements for an annuity have been satisfied, a plaintiff may recover the annuity by an action of contract.  *Lenox* v. *Medford,* 330 Mass. 593, 595. Here, however, the requirements have not been satisfied. There are lacking necessary determinations by the city manager and council (the "appropriate public authority" under § 89A).  This section requires (1) that it be "proved to the satisfaction of" the public authority that the death of the deceased was the natural and proximate result of an accident or hazard undergone in the performance and within the scope of duty and (2) that the "amount of any such annuity shall from time to time be determined within the limits . . . [set out in the section] by the . . . public authority."

General Laws c. 32, § 94 (*supra,* note 2), although helpful to the plaintiff, does not make action by the public authority unnecessary.  As the authority has failed to grant an annuity there is no present indebtedness from the city to the plaintiff for which an action at law will lie and the defendant's exceptions must be sustained.  Something should be said, however, of the respective rights and obligations. See *Massachusetts Charitable Mechanic Assn.* v. *Beede,* 320 Mass. 601, 609.

The plaintiff has the benefit of the presumption under § 94 if the deceased died from the same hypertension or heart disease that brought about the retirement.  The presumption continues that such disease was service connected. *Selectmen of West Springfield* v. *Hoar,* 333 Mass. 257, 259. Section 94, however, at least as worded prior to St. 1956, c. 411, did not purport to create a presumption that the heart disease which causes death some time after retirement is the same heart disease that caused retirement.

Although the statute (G. L. c. 32, §§ 7 [1], 6 [3]) provides that no member shall be retired for service connected disability in the absence of a certificate of a "medical panel" setting out both the incapacity and whether the disability

might be service connected, the effect of § 94 is that the latter requirement "no longer applies as a condition precedent to hypertension or heart disease cases." *Mathewson* v. *Contributory Retirement Appeal Bd.* 335 Mass. 610, 615–616. This principle is applicable in proceedings for an annuity under § 89A. Its effect is not to eliminate the necessity of a certificate by the medical board filed with the city treasurer (and in the light of which the public authority is entitled to act, as an amendment to the statute [St. 1956, c. 424[3]] in effect expressly provides) but is to limit the significance of the certification. The medical board does not have a duty to provide statements of evidence, *Mathewson* v. *Contributory Retirement Appeal Bd.* 335 Mass. 610, 615, but its certificate is in itself in the nature of evidence (*ibid.,* 615), on which, subject to the effect of the presumption, the public authority may act. The plaintiff and the public authority are entitled to an understandable certificate by the medical board which reflects the evidence before it. The board in the circumstances of this case should certify (1) whether death was caused by the disease on which retirement was based, and (2) whether there was evidence that the disease was not service connected and their finding on that issue. Unless a certificate of the board, based on evidence that the disease was not service connected, or other "competent evidence" before the public authority, shows that the disease was not service connected, the statutory presumption will be operative in the proceedings before it. Because of the ambiguity of the board's report as made (that it "does not find any evidence to indicate that the deceased . . . died as a result of an injury received in the performance of his duty") the certificate is inadequate.

We assume that the public authority could have inferred from the certificate that the disabling disease was also the disease which caused the death. With the aid of the presumption that that disease was service connected, the cer-

[3] "In the case of a city employee, within thirty days after receiving a medical report on such employee from the medical board the mayor shall file said report with or without recommendations to the city council, and they shall act thereon within sixty days."

tificate, so construed, would have supported the vote of an annuity. We think the certificate did not justify the opposite inference, that is, that the disabling and the killing diseases were not the same.

In the light of these principles there appears occasion for further action both by the medical board and by the public authority, with the necessary determinations made in accordance with reasonably appropriate standards.

*Exceptions sustained.*