STATE RETIREMENT BOARD vs. CONTRIBUTORY
RETIREMENT APPEAL BOARD.

Suffolk.   February 19, 1981. — July 30, 1981.

Present: ARMSTRONG, ROSE, & DREBEN, JJ.

*Retirement.*

A former State employee who had applied for and received early retire-
ment benefits was not thereby precluded from applying for an acci-
dental disability pension. [307-309]

CIVIL ACTION commenced in the Superior Court De-
partment on August 8, 1978.

The case was heard by *Donohue, J.*

*Kevin P. O'Malley,* Special Assistant Attorney General
(*Paul E. Shanley* with him) for the plaintiff.

*William A. Mitchell,* Assistant Attorney General, for the
defendant.

ROSE, J.   This appeal presents a single question of law:
may a former State employee be deprived of the right to ap-
ply for an accidental disability pension solely because he
had previously applied for and received early retirement
payments?  We answer the question in the negative and af-
firm the judgment of the Superior Court which remanded
the case to the State Retirement Board for further pro-
ceedings.

Joseph Olson, the applicant, served as a boatswain with
the Department of Natural Resources for over twenty-four
years.  On July 11, 1972, after a day of strenuous duty in
Boston harbor, he suffered a myocardial infarction (heart
attack).  He filed a "Notice of Injury" form on September 7,
1972, within the ninety days required by G. L. c. 32,
§ 7(1).  He took approximately a year of sick leave and then
filed for superannuation retirement on April 23, 1973, to be

effective on June 30, 1973, three days after his fifty-fifth birthday. He has received those benefits ever since. Olson later also received a lump sum workmen's compensation award for his heart attack.

On January 9, 1975, Olson applied for accidental disability retirement, claiming that his heart condition had rendered him "totally and permanently incapacitated for further duty . . . by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties" on July 11, 1972. G. L. c. 32, § 7(1), as appearing in St. 1945, c. 658, § 1.[1] The level of benefits is presumably higher for this type of retirement. The State Retirement Board (SRB), the plaintiff here, denied the application on March 4, 1975, on the ground that it "was [filed] subsequent to your voluntary retirement." Olson appealed to the defendant, the Contributory Retirement Appeal Board (CRAB), which reversed and remanded, on the ground that nothing in § 7(1) required an applicant to be a "member in service" (G. L. c. 32, § 3[1][*a*][i], as appearing in St. 1945, c. 658, § 1) at the time of his application, making the voluntary retirement irrelevant. The Superior Court affirmed for the same reason. We agree with the CRAB and the Superior Court.

The accidental disability provision applies only to a "member in service," a term defined in G. L. c. 32, § 3(1)(*a*)(i): "Any member who is regularly employed in the performance of his duties . . . . [T]he status of a mem-

---

[1] The section reads, in relevant part: "Any member in service . . . who becomes totally and permanently incapacitated for further duty before attaining the maximum age for his group by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties at some definite place and at some definite time on or after the date of his becoming a member . . . , upon his written application on a prescribed form filed with the board . . . shall be retired for accidental disability . . . . Except as provided for in subdivision (3) of this section, no such retirement shall be allowed unless such injury was sustained or such hazard was undergone within two years prior to the filing of such application or, if occurring earlier, unless written notice thereof was filed with the board by such member or in his behalf within ninety days after its occurrence."

State Retirement Board *v.* Contributory Retirement Appeal Board.

ber in service shall continue as such until his death or until his prior separation from the service becomes effective by reason of his retirement [or other separation] . . . ." After retirement, a member becomes a "member inactive." G. L. c. 32, § 3(1)(*a*)(ii), as appearing in St. 1945, c. 658, § 1. The only question here is whether "member in service" status is required at the time of application or only at the time of injury.

In *Gannon* v. *Contributory Retirement Appeal Bd.*, 338 Mass. 628, 632 (1959), a case with similar facts, the court read G. L. c. 32, § 3(1)(*c*),[2] together with § 3(1)(*a*)(ii), to mean that "a former employee, [otherwise] entitled [to benefits], shall have whatever status is necessary to permit him to make application for that allowance notwithstanding that in the meantime he has ceased to be a 'member in service' within the provisions of § 3(1)(*a*)(i)." The interpretation is controlling and dispositive. See *Boston Retirement Bd.* v. *McCormick*, 345 Mass. 692, 695-696 (1963). That the employees in *Gannon* and *McCormick* were discharged, while Olson took voluntary early retirement, is a distinction without a difference; each had been a "member in service" at the relevant time for eligibility for benefits, but had ceased to be one at the time of application. It is the employee's status at the time of accident that determines eligibility under G. L. c. 32, § 7(1).

Although we would reach the same result in any event, we feel we must answer the plaintiff's argument, pressed so vigorously before the CRAB, the Superior Court, and this court, that to allow a person to apply for accidental disability at any time, regardless of his status at the time of application, would introduce such an element of uncertainty into the system as to jeopardize its fiscal stability and even the

---

[2] "No description of a person having any rights or privileges under the provisions of sections one to twenty-eight inclusive, such as member in service, member inactive, beneficiary or otherwise, shall serve to deprive him of any such rights or privileges. A member shall retain his membership in the system so long as he is living and entitled to any present or potential benefit therein."

Commonwealth's ability to issue bonds. We see the risk of a large number of late claims for accidental disability as minimal. The applicant has the incentive of higher benefits to induce him to file for accidental disability as early as possible. In addition, the likelihood that the evidence would weaken considerably should discourage an applicant from the ten or twenty-year delay in filing feared by the SRB. To bar otherwise valid claims — including those where the applicant was unaware of the rights available, as in *Boston Retirement Bd.* v. *McCormick, supra* at 695 — on the basis of the plaintiff's fears would violate the beneficial purpose of the retirement system.

*Judgment affirmed.*