Merrick, J.
This is an action by a retired employee of the defendant, City of Gloucester (“the City”),to recover unpaid sick leave benefits allegedly owed to him under the City’s Personnel Ordinance.
The trial court found that the City violated such Ordinance'in terminating plaintiff Robert O’Hanley’s (“O’Hanley”) sick pay, and entered judgment for O’Hanley. The City now claims to be aggrieved on this appeal by the court’s denial of four requests for rulings that the City complied with the practical purpose and policies of the Ordinance, and refusal to dismiss the action for lack of subject matter jurisdiction.
The reported evidence was largely stipulated. At all times relevant hereto, a Personnel Ordinance was in effect in the City of Gloucester which established a civil service employee classification and compensation plan, pursuant to G.L.c. 41, §108A, including sick leave benefits pursuant to G.L.c. 40, §21A. O’Hanley was classified as a “management employee,” under the Ordinance during his twenty year service with the City’s Department of Public Works. On August 19, 1988, O’Hanley suffered a disabling stroke. For the ensuing eighty-five (85) week period from August 18,1988 to April 9,1990, the City paid O’Hanley his full weekly salary as sick pay pursuant to Article 5, §5-4 (i) of the Personnel Ordinance, which provides:
(i) Management employees of the city are considered to be salaried employees, thus absence, due to illness, will not result in the loss of pay. Therefore, the allocation and aggregating of a specific number of sick days per year for management employees is neither appropriate nor in the best interest of the city or employee.
This unlimited sick pay provision is qualified in the Ordinance solely by §§5-4(j) and (1) which also set forth the only Ordinance provisions relevant to sick leave termination.
© The mayor and/or department head, at all times, shall have the right to investigate and require evidence of sickness on the part of any management employee as. per the process so outlined in section 5-4(0 above. Continued employment of management employees in a prolonged illness status shall be determined by the medical board and appropriate recommendations made to the mayor or city council.
0) Relative to section (0, management employees who are on sick leave for a period of eight (8) weeks shall be subject to review by such medical board.
The “medical board” so referenced is defined in §5-4 (f) as one organized by the mayor to determine the employee’s continued sick pay rights, and comprised of one *120 physician chosen by the mayor and one by the employee, with a possible third physician to be selected by the first two in the event of their disagreement.
O’Hanley’s sick pay was terminated on April 9,1990 by the unilateral action of the City’s Personnel Director. It is undisputed that the mayor never convened the prescribed §5-4 (f) medical board to review O’Hanley’s case. O’Hanley now seeks sick pay for the forty-three week period from the termination of his benefits on April 9,1990 to the commencement of his disability retirement pension on February 1.1991.
The chronology of events which culminated in the termination of O’Hanley’s benefits clearly indicates that the City took no effective action cognizable under the Ordinance. Three months after O’Hanley’s stroke, his doctor informed the City that he considered O’Hanley to be permanently disabled from both the stroke and coronary artery disease. In December, 1988 and again in August, 1989, the City’s Personnel Director advised the mayor’s office that O’Hanley’s continuing sick leave status required some action by the mayor. None was taken.
In December, 1988, the Personnel Director had also advised O’Hanley that his extended sick leave required medical verification, and recommended that he apply for retirement. O’Hanley immediately submitted an application for an accidental disability retirement to the Gloucester Retirement Board (“GRB”). On February 11,1989, a state medical panel, convened by the Public Employees Retirement Administration (“PERA”) to evaluate O’Hanley’s accidental disability, found that his disability was not causally related to his job.
After written complaints by the Public Works Director about O’Hanley’s continuing sick leave, the GRB finally approved O’Hanley’s accidental disability retirement application on April 11,1990, subject to review and approval by PERA. Upon receipt the next day of the GRB’s vote, the Personnel Director immediately terminated O’Hanley’s employment and sick leave payments, effective April 6,1990, on the basis of his retirement.
However, PERA rejected the GRB’s approval on the grounds of insufficient evidence and unlawful procedure. Three times during 1990, PERA remanded O’Hanley’s accidental disability application to the GRB, which in turn supplemented or reaffirmed it and returned it to PERA. On December 17,1990, PERA disapproved the application and remanded it to the GRB which, on January 9,1991, reversed its earlier decision and denied O’Hanley’s accidental disability application.
O’Hanleythenfiled an ordinary disability retirement applicationwhich was promptly approved on February 1,1991. O’Hanley received neither sick pay, nor retirement benefits, for the forty-three week period from April 9,1990 to February 1,1991.
1. There is no merit to the City’s contention, presented for the first time at the close of trial,[1] that the District Court Department lacked subject matter jurisdiction herein because G.L.c. 258, §3 (“Massachusetts Tort Claims Act”) grants exclusive jurisdiction to the Superior Court Department in all civil actions against public employers.
The scope of G.L.c. 258, §3 is expressly restricted to civil actions “cognizable under this chapter. ” Actions so “cognizable” are described in G.L.c. 258, §2 and may be fairly characterized as actions in tort. Such characterization is consistent with the fundamental purpose for which G.L.c. 258 was enacted to “remove the defense of immunity in certain tort actions against the Commonwealth, municipalities and other governmental subdivisions.” Dinsky v. Framingham, 386 Mass. 801, 804 (1982).
Legislative abrogation of sovereign immunity was unnecessary, however, for those common law claims historically actionable against a governmental entity. These include traditional actions in contract based on common law which are not cognizable under G.L.c. 258. Wetherell v. Boston Mut. Life Ins. Co., 18 Mass. App. Ct. 614, 616 (1984). Prior to the enactment of the Massachusetts Tort Claims Act, an action in contract was the proper method of pursuing a claim by a municipal employee for *121 compensation due under an ordinance or statute. Amelotte v. Worcester, 343 Mass. 155, 157 (1961); Weiner v. Boston, 342 Mass. 67, 68 (1961); Lenox v. Medford, 330 Mass. 593, 595 (1953); Bell v. Treasurer of Cambridge, 310 Mass. 484, 487 (1941). Such preexisting common law rights of action against public employers were not eliminated by the enactment of G.L.c. 258, and are not within its jurisdictional or procedural scope. Asiala v. Fitchburg, 24 Mass. App. Ct. 13, 17-18 (1987).
In this case, O’Hanley’s claim sounds in contract, and is thus within the subject matter jurisdiction of the district courts.[2]
2. There was also no error in the trial court’s denial of four requests for rulings by the City which sought a determination that the city followed procedures consistent with the practical purpose of its Personnel Ordinance, and thus justifiably terminated O’Hanley’s sick leave benefits. We reject the City’s too facile arguments that the state medical panel convened by PERA to consider O’Hanley’s retirement eligibility effectively constituted a §5-4 (f) city medical board; or that the unilateral review of O’Hanley’s medical file and resulting action by an unauthorized and medically untrained Personnel Director was a sufficient substitute for both a medical board’s recommendations and for the mayor or city council’s official consideration of the same. See McLean v. Medford, 340 Mass. 613, 616 (1960). Municipalities are bound by their ordinances, see Broderick v. Boston, 375 Mass. 98 (1978), which have the force of law and which create actionable rights in those specific groups which are the subject thereof. See Ludlow Educ. Assoc. v. Ludlow, 31 Mass. App. Ct. 110, 119-120 (1991).
It is undisputed that the mayor did not convene the prescribed medical board in O’Hanley’s case for reasons unknown to us, although he or she could easily have done so at any time in response to the repeated urgings of City officials. The trial judge correctly ruled that the City did not comply in this case with its own Personnel Ordinance.
3. We decline to consider arguments, raised by the City for the first time on this appeal, Commissioner of Correction v. McCabe, 410 Mass. 847, 850 n.7 (1991); Krupp v. Gulf Oil Co., 29 Mass. App. Ct. 116, 120 n.4 (1990), that O’Hanley, having done without either sick pay or pension benefits for 43 weeks, will be unjustly enriched by the trial court’s judgment; or that a municipal ordinance, with the force of law, may be likened to the personnel manual of a private corporation.
There being no error, the report is dismissed.

 The issue of subject matter jurisdiction may be raised at any time. Dist Mun. Cts. R. Civ. R, Rule 12(h) (3); Litton Business Sys., Inc. v. Commissioner of Revenue, 383 Mass. 619, 622 (1981).

 To the extent that Erickson v. Manca, 1992 Mass. App. Div. 199, reaches a different result, we decline to follow it.