MANUEL J. LEAL *vs.* CONTRIBUTORY RETIREMENT APPEAL BOARD.

No. 96-P-63.

Bristol. December 9, 1996. - March 20, 1997.

Present: PERRETTA, KASS, & JACOBS, JJ.

*Retirement. Public Employment,* Accidental disability retirement, Retirement. *Statute,* Construction.

The Contributory Retirement Appeal Board incorrectly ruled, in light of the statutory text, the case law and the legislative history, that a "member in service" who sustained a job-related injury and who had applied for and had received superannuation retirement benefits under G. L. c. 32, § 5, was foreclosed from thereafter applying for disability benefits under G. L. c. 32, § 7. [330-333]

CIVIL ACTION commenced in the Superior Court Department on August 22, 1994.

The case was heard by *John J. O'Brien, J.*

*Brenda J. McNally* for the plaintiff.

*Thomas A. Hickey, III* (*Kristin G. McGurn* with him) for the defendant.

KASS, J. In *State Retirement Bd.* v. *Contributory Retirement Appeal Bd.,* 12 Mass. App. Ct. 306 (1981) (we shall refer to that opinion as the *Olson* case),[1] we held that a governmental employee who is a "member in service" at the time of an on-the-job injury may apply for accidental disability benefits under G. L. c. 32, § 7, notwithstanding that the employee had previously applied for and had received superannuation retirement benefits under G. L. c. 32, § 5.

The Contributory Retirement Appeal Board (CRAB), in the case now before us, decided that if an employee makes an initial application for § 5 benefits with the assistance of

[1]Joseph Olson was the name of the applicant for retirement benefits in *State Retirement Bd.* v. *Contributory Retirement Appeal Bd.*

counsel,[2] that application for and receipt of superannuation retirement benefits constitutes a binding election that forecloses later application for the more generous § 7 accidental disability benefits. Upon judicial review under G. L. c. 30A, § 14, a judge of the Superior Court adopted CRAB's decision. We think the CRAB decision injects a qualification into the holding of the *Olson* case that is not supportable in light of the statutory text, the case law, and the legislative history, and we reverse.

Leal, the employee, began work as a custodian for the Dighton-Rehoboth school department on December 10, 1979. Some nine years later, on February 25, 1989, he hurt his neck in a job-related motor vehicle accident. He lost no work time as a result of that injury. Later that year, on December 29, 1989, while working, he injured his knee. That injury Leal reported to his employer, and because the injury was sufficiently severe and nagging, he underwent arthroscopic surgery. Leal never returned to work. He received worker's compensation benefits for both his neck and knee injuries.

On September 25, 1990, Leal applied for superannuation retirement (§ 5) benefits and began receiving those benefits as of that date. About six months after his treating physician told Leal that his knee had improved as much as it was going to, and that Leal would be unable to resume his previous employment, Leal on June 17, 1991, applied to the Bristol County retirement board (local board) for accidental disability (§ 7) payments.

The local board denied the application without convening a medical panel. Leal took the prescribed next step: he appealed to CRAB. An administrative law magistrate heard the appeal and decided, on the authority of the *Olson* case, that the local board should process Leal's application for accidental disability benefits. CRAB did not follow the magistrate's recommended disposition of the appeal. Rather,

---

[2]Leal says he did not have assistance of counsel. CRAB and the local board say that Leal stipulated he did have a lawyer's help when he applied for superannuation benefits. They base their assertion upon a reference to such a stipulation by the administrative law magistrate. No stipulation appears in the record appendix. To the extent the parties continue to dispute whether Leal had the assistance of counsel at particular stages, we need not resolve the controversy because, as we decide the case, whether Leal had the benefit of legal advice when he applied for superannuation benefits is of no consequence.

it ruled that the *Olson* case was to be narrowly interpreted and that a "member in service" who, at the time of applying for superannuation retirement benefits, was aware of his injuries and was represented by counsel could not subsequently change retirement status by an application for accidental disability retirement benefits.

At the heart of the *Olson* decision is the principle that "[i]t is the employee's status at the time of [the] accident that determines eligibility under G. L. c. 32, § 7(1)." 12 Mass. App. Ct. at 308. In so stating, the court in *Olson* built on *Gannon* v. *Contributory Retirement Appeal ·Bd.*, 338 Mass. 628, 632 (1959). Both opinions advert to G. L. c. 32, § 3(1)(*c*), as indicating a legislative purpose to accord to members of the retirement system the benefits for which they qualified while in service. That design is given voice in the second sentence of § 3(1)(*c*) as follows: "A member shall retain his membership in the system so long as he is living and entitled to any present or potential benefit therein."

The statute contains no rules of irrevocable election of retirement status, whether on advice of counsel or otherwise. In urging adoption of a rule of binding election — if the employee knows his physical condition and has had the advice of counsel — the local board makes two arguments. The first is that someone in Leal's position is ·able to receive worker's compensation, without set-off against superannuation retirement benefits.[3] By contrast, worker's compensation payments are set off against accidental disability benefits payable under G. L. c. 32, § 7. An employee, thus, fares better by retiring on superannuation status and switching to accidental disability status when worker's compensation payments have ceased. This is opportunistic, and, the local board suggests, therefore, undesirable; the law ought not countenance it. Second, the local board argues, without any particular record support, that a status change of the sort made by Leal imposes great administrative difficulty on local retirement boards. There is

---

[3]Leal's superannuation benefit was $341.25 per month. Added to his worker's compensation award of $1,197.67 per month, Leal had aggregate monthly benefits of $1,538.92, an excellent allowance compared with his preretirement gross salary of $1,683.33. The monthly accidental disability retirement benefit available to Leal as of September, 1990, was $1,317.95, against which the workers' compensation benefit would have been set off, leaving the employee with $220.97 less per month aggregate take home under accidental disability retirement status.

no descent to particulars on this score. A similar line of argument was offered and rejected in the *Olson* case.

These are interesting observations. There is, at least on the face of things, a touch of anomaly in the ability to compound worker's compensation benefits with superannuation retirement but not with accidental disability retirement benefits. Ten years had elapsed, however, between the publication of the *Olson* decision and Leal's application for accidental disability retirement benefits. During that period, the Legislature amended G. L. c. 32, § 7, four times.[4] On none of those occasions did the Legislature choose to alter or qualify the principle that an employee who is a member in service at the time of a disabling job-related injury is eligible for benefits under § 7. The reenactment of a statute following judicial construction gives weight to that statutory construction. See *Barlow* v. *Wareham*, 401 Mass. 408, 411 (1988). The policy issues raised by the local board in this appeal and by CRAB in its decision are in the province of legislative deliberation rather than judicial determination.

The judgment is reversed. A judgment shall be entered in the Superior Court remanding the case to the Bristol County retirement board for the processing of Leal's application for accidental disability retirement.[5]

*So ordered.*

---

[4] Statutes 1982, c. 630, § 18; St. 1983, c. 364, § 6; St. 1984, c. 189, § 40; St. 1987, c. 697, §§ 33-36.

[5] We intimate no opinion whether the job-related injuries are of a nature that justifies accidental disability retirement benefits. That determination is within the province of the medical panel which, under the statute, is to be convened by the local retirement board.