HERMAN M. FINER *vs.* CITY OF BOSTON
(and two companion cases[1]).

Suffolk.   January 3, 1956. — June 1, 1956.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Release. Contract,* Consideration, Sealed contract, Validity, With deputy collector of taxes. *Public Policy. Municipal Corporations,* Officers and agents, Employees. *Taxation,* Deputy collector of taxes.

The consideration supporting an unsealed release need not be recited on the face thereof, but may be proved aliunde. [240]
An unsealed instrument whereby a deputy collector of taxes agreed to relinquish any right to fees respecting tax warrants placed in his hands for collection but subsequently recalled was supported by consideration where it appeared that the collector was unwilling to issue warrants to the deputy as requested by him unless he executed such instrument and that upon its execution the collector did issue a substantial number of warrants to him. [240]

[1] The companion cases are Herman M. Finer *vs.* Daniel F. Donovan, and Herman M. Finer *vs.* James E. Gildea.

An instrument whereby a deputy collector of taxes waived his right to fees respecting tax warrants placed in his hands for collection "in all cases where there was a wrongful assessment, a departmental error, there exists a right of abatement, and all other withdrawals" was not limited in its scope to warrants recalled from him for the three reasons specifically stated. [241]

An agreement by a deputy collector of taxes of Boston to relinquish his right to fees respecting certain tax warrants placed in his hands for collection was not contrary to public policy as an attempt to waive fees fixed by statute or ordinance since his fees were not fixed by any statute and it appeared that they were not fixed by any ordinance. [241–242]

The compensation payable by a municipality or its collector of taxes to deputy collectors was not fixed by G. L. (Ter. Ed.) c. 60, § 15, as appearing in St. 1943, c. 179. [242]

Whether taxpayers had fully discharged their obligations to a city respecting taxes collected without the statutory fees for notice of issuance of a warrant and for exhibition of the warrant or delivering or leaving a copy was immaterial to the right of a deputy collector of taxes to be paid compensation respecting such taxes by the city or the collector. [243]

THREE ACTIONS OF CONTRACT. Writs in the Superior Court dated July 24, 1951, in one of the actions and April 12, 1952, in the others.

In each action judgment for the defendant was ordered by *Donahue*, J., and the plaintiff appealed and alleged exceptions.

*Nathan Moger*, (*Meyer H. Goldman* with him,) for the plaintiff.

*William H. Kerr*, (*J. Edward Keefe, Jr.*, with him,) for the defendants.

SPALDING, J. These are three actions of contract. One is against the city of Boston; another is against Daniel F. Donovan, the collector of taxes for the city from January 8, 1946, to January 2, 1950; and the third is against James E. Gildea, the collector of taxes on January 3, 1950, and at all times material thereafter.

The cases were heard in the court below on a statement of agreed facts. Those here pertinent are the following: The plaintiff was appointed a deputy collector of taxes for the city of Boston under G. L. (Ter. Ed.) c. 60, § 92, as appearing in St. 1933, c. 82, § 1, as amended, for four prac-

tically successive terms, the first commencing on March 16, 1948, and the last expiring on December 31, 1951. None of the documents executed in connection with any of the aforesaid appointments made any mention of the compensation to be paid to the plaintiff for his services as deputy collector; and at no time was there any express agreement, either oral or written, between any of the defendants and the plaintiff concerning compensation for such services.

At nine separate times from April 2, 1948, to February 9, 1951, the collector of taxes issued to the plaintiff in the aggregate many thousands of warrants relating to motor vehicle excise and poll taxes. Each of these warrants required and directed the plaintiff "to distrain the property or take the body of the person assessed and to proceed as required of collectors in like cases," and to "make return of this warrant with your doings thereon within thirty days." On receiving a warrant the plaintiff executed on the stub for each warrant a writing acknowledging its receipt and agreeing to turn over to the collector all money received by virtue of the warrant no later than one week from the date of its receipt and to retain no money as a fee for service until the full amount due was delivered to the collector, and that such fees should not be in excess of those permitted by law.

There were, all told, nine batches of warrants turned over to the plaintiff. In the case of "at least certain, if not all, warrants in each batch" the plaintiff sent a notice to the delinquent that a warrant had been issued. The plaintiff did not exhibit any of the warrants in the first or fourth batch, or deliver a copy thereof, to the delinquent; nor did he leave such a copy at his last and usual place of abode or business. But the plaintiff "did exhibit certain of the warrants in each of the other batches, or deliver a card, to the delinquent or his representative, or leave a card at his last and usual place of abode or . . . business." The entire expense incurred in performing the foregoing services, including the printing and addressing of the cards, was borne by the plaintiff. In no case did the plaintiff exhibit

a warrant or deliver or leave a card unless he had first sent a notice.

On August 1 and October 15 of 1948, August 15, 1949, June 15 and October 15 of 1950, and April 13, 1951, the collector recalled from the plaintiff some of each batch of warrants which had been issued to him on April 2, May 14, and July 6 of 1948, March 10 and June 6 of 1949, March 1 and July 6 of 1950, and February 9, 1951. On a date which is disputed, the collector recalled from the plaintiff some warrants which had been issued to him on November 26, 1948. In the case of all recalled warrants no tax had been collected by the plaintiff.

At no time did the plaintiff indorse on any warrant any certificate or return of his doings thereon, but he did, on the face of at least some, if not all, of the warrants returned by him unsatisfied, make a notation such as "female," "in armed forces," "paid at city hall," "mail returned," for the purpose of enabling him to refresh his memory as to what he had done with respect to the warrant.

On November 17, 1948, the plaintiff wanted the collector to give him some warrants but the collector was unwilling to do so unless the plaintiff executed the two instruments described in the footnote.[1] Accordingly on that date the plaintiff executed and delivered both instruments to the collector. Thereafter on November 26, 1948, the collector issued to the plaintiff a batch of over six thousand warrants relative to 1948 poll taxes.

On March 9, 1949, the plaintiff again wanted the collector to issue him some warrants but the collector again was unwilling to do so unless the plaintiff executed a waiver of the sort described in the footnote. The plaintiff executed such

---

[1] The first instrument was of the following tenor: "I, Herman M. Finer, in consideration of having been duly authorized by Daniel F. Donovan, City Collector of Boston, to collect by warrant poll taxes, personal taxes and motor vehicle taxes for the years 1946 and 1947, due [*sic*] hereby waive any rights I may have to collect fees and costs from said City Collector, or the City of Boston, on warrants which were placed in my hands for collection in all cases where there was a wrongful assessment, a departmental error, there exists a right of abatement, and all other withdrawals."

The second was identical except that it referred to "being duly authorized . . . to collect . . . taxes for the year 1948."

a waiver on that date. It was identical with the instrument set forth in the footnote except that it was in consideration of the plaintiff having been authorized "to collect by warrant excise taxes for the year 1948." Subsequently on March 10, 1949, and on June 6, 1949, the collector issued to the plaintiff a substantial number of warrants relative to motor vehicle excise taxes.

On March 1, 1950, and on February 7, 1951, the same procedure was repeated. On each occasion the plaintiff desired to have warrants to collect, but the collector, before giving him any, insisted that he execute and deliver to him a release and that was done. The release, which was the same in each instance, except for the date, is set forth in the footnote.[1] It will be noted that the wording of these instruments is somewhat different from those previously described and that they contain a recital of a seal. See G. L. (Ter. Ed.) c. 4, § 9A. Following the execution of each instrument, a large number of motor vehicle excise and poll tax warrants were issued to the plaintiff.

Paragraph 29 of the agreed statement divides each batch of warrants into categories according to (1) whether there was (a) only a notice or (b) a notice and exhibition of the warrant or (c) a notice and card; (2) whether the recall was (a) before the thirtieth day after issuance of the warrant or (b) after the thirtieth day from issue but before the general recall of the batch or (c) by the general recall of the batch; (3) whether the tax was (a) collected or (b) abated or (c) still remained outstanding; and (4) whether the collection or

---

[1] "WAIVER OF FEES

"Whereas I am desirous that the Collector of Taxes for the City of Boston issue to me from time to time warrants under General Laws, ch. 60, sec. 34, as amended, and other like statutes, for valuable consideration the receipt whereof is hereby acknowledged, I do hereby covenant not to collect, or attempt to collect, from the City of Boston, the Collector of Taxes for said City, any person named in any such warrant or any other person any fee or charge in connection with any such warrant or warrants which may for any reason be withdrawn or recalled by said Collector.

"Witness my hand and seal this 1st day of March 1950.

/s/ HERMAN M. FINER
(Signature)
Deputy Collector
(Title)"

abatement was (a) prior to or simultaneous with the recall or (b) after the recall but within thirty days after issuance of the warrant or (c) after the recall and the expiration of the thirty days from issue but before the expiration of the plaintiff's term or (d) after the recall, the expiration of thirty days from issue and the expiration of the plaintiff's term. Under paragraph 30 of the agreed statement judgment in each case was to be entered for the defendant if the plaintiff was not entitled to recover with respect to any category of any batch.

In certain instances, the taxes to which the warrant related were collected by the collector of taxes, or lawfully abated prior to or simultaneously with the recall of the warrant; in certain other cases they were collected by him subsequent to such recall but within thirty days of the issuance to the plaintiff of the particular batch of warrants; in certain other cases they were collected by him subsequent both to such recall and to such period but prior to the expiration of the plaintiff's term during which the recall occurred; and in certain cases they were collected subsequent to the expiration of the term. No fee in these instances was collected from the taxpayer. In some cases no tax was ever collected.

The plaintiff concedes that he received $1 on every warrant he returned satisfied in connection with which he sent a notice only, and $3 on every warrant so returned in connection with which he both sent a notice and exhibited the warrant or left a copy thereof. What the plaintiff seeks by the present actions is $1 for every recalled warrant in connection with which he only sent a notice, and $3 for every recalled warrant in connection with which he both sent a notice and either exhibited the warrant or delivered or left a card. These fees are claimed irrespective of whether the tax was collected. In none of these cases was the fee received by the defendants.

The judge below ordered judgment for the defendant in each case and the cases come here on exceptions and by appeal. Since the case is properly here by appeal (G. L. [Ter.

Ed.] c. 231, § 96) and nothing would be open on the exceptions that could not be considered on the appeal, we dismiss the exceptions.

It is the defendants' contention that the waivers or releases executed by the plaintiff preclude recovery in all three actions. These instruments cover the entire period during which the nine batches of warrants were issued. The plaintiff, however, raises numerous objections to their validity. He first urges that there was no consideration for the two releases of November 17, 1948, or for that of March 9, 1949. (It will be noted that these instruments were not in the form of sealed instruments.) The agreed facts reveal that on November 17, 1948, the plaintiff was desirous of obtaining from the collector more warrants but the latter was unwilling to issue any unless the plaintiff executed the waivers or releases. Upon their execution by the plaintiff the collector on November 26, 1948, issued additional warrants to the plaintiff. The instrument of March 9, 1949, grew out of a similar request and refusal on the part of the plaintiff and collector respectively, and as a result of its execution by the plaintiff the collector issued more warrants to the plaintiff. These waivers covered the first six batches of warrants.

A release by deed must, of course, be under seal and this is the customary and most appropriate form of making one. *Dunham* v. *Branch*, 5 Cush. 558, 561. But as that case points out, a release not under seal may be equally effective if founded upon good consideration. And the consideration need not appear on the face of the instrument; it may be proved aliunde. *Arms* v. *Ashley*, 4 Pick. 71, 74. The collector was under no duty to issue further warrants to the plaintiff and he could make the giving of additional warrants conditional on the waiver of claims by the plaintiff. The subsequent issuance of the various batches of warrants was sufficient consideration for the plaintiff's promise to relinquish his rights touching the matters contained in the documents of November 17, 1948, and March 9, 1949. *Petty* v. *Allen*, 134 Mass. 265.

The last three batches were covered by the instruments of March 1, 1950, and February 7, 1951, and since in each a seal was recited they had the effect of a sealed instrument. G. L. (Ter. Ed.) c. 4, § 9A. *Glendale Coal Co.* v. *Nesson,* 312 Mass. 293.

The plaintiff further argues that all of the instruments, except the last two, were specific releases which do not embrace the matters here in dispute. We do not agree. Under these the plaintiff waived any rights he might have for costs and fees "in all cases where there was a wrongful assessment, a departmental error, there exists a right of abatement, and *all other withdrawals*" (italics supplied). The italicized words are sufficiently broad to comprehend the matters which are the subject of this litigation.

The plaintiff makes the further objection that all of the releases are void as against public policy. It is his contention that the statutes dealing with the collection of local taxes (G. L. [Ter. Ed.] c. 60) fix the compensation to be paid to deputy collectors and that any attempt on his part to waive his statutory fees is of no effect. In support of this argument the plaintiff relies on *Allen* v. *Lawrence,* 318 Mass. 210. In that case we held, in accordance with the great weight of authority, that where compensation has been fixed by statute or city ordinance a contract entered into by a governmental employee whereby he agreed to accept lower compensation violated public policy and was of no effect. But that principle does not govern the cases at hand for reasons that will presently appear.

The city of Boston in May, 1875, accepted c. 176 of the Acts of 1875 which provided for the establishment of the office of collector of taxes. The act authorized the city to pay the collector of taxes such compensation for his services as the city council should from time to time determine. From then until 1890 the salaries of the deputy collectors were governed by successive municipal ordinances. Boston's "Revised Ordinances of 1890" repealed all existing ordinances and at the same time omitted any provision de-

termining the salary of the deputy collectors. In a report of the city council's committee on ordinances it was stated that "a number of salaries of subordinates are omitted, being left to the heads of departments to establish under the provisions of the city charter." No order, ordinance, resolution, or vote passed by the city council at any time since the adoption of the "Revised Ordinances of 1890" has contained any provision determining the compensation of a deputy collector.

Section 92 of G. L. (Ter. Ed.) c. 60 empowers a collector of taxes, subject to the approval of the commissioner, to appoint deputies but it does not fix their compensation. The plaintiff argues, however, that their compensation is established by c. 60, § 15, as appearing in St. 1943, c. 179.[1] We do not agree. Those sections set forth the interest, charges and fees which may be added to the amount of the tax and collected as a part thereof. They establish as between the taxing authority and the taxpayer certain charges for the cost of collection arising from the taxpayer's delinquency. But they do not purport to fix the compensation to be paid by the city or collector to the deputy.

In the agreed facts it is stipulated that at no time was there any express agreement, either oral or written, between any of the defendants concerning the compensation for the plaintiff's services. Prior to the present controversy "whenever a $1 fee for notice to delinquent of issuance of warrant or a $3 fee for notice to delinquent of issuance of warrant and exhibition of warrant or delivery or leaving of copy thereof was added to and collected as part of a tax *for which a warrant was in the hands of the plaintiff*, it was the practice for the plaintiff to receive for his own use the sum of $1 or $3, as the case might be" (emphasis supplied). It is to be

---

[1] Section 15 reads in part: "Except as provided in section fifteen A [travel fee not allowable in case of delinquent poll tax], the following interest, charges and fees, and no other, when accrued, shall severally be added to the amount of the tax and collected as a part thereof: — . . . 10. For notice to the delinquent that warrant has been issued, one dollar; 11. For exhibiting a warrant or delivering a copy thereof to the delinquent or his representative or leaving it at his last and usual place of abode or of business, before and without distraint or arrest, two dollars." See now St. 1952, c. 398.

noted that hitherto the plaintiff had only been paid in cases where the warrant was still in his hands and had not been withdrawn and where he had collected the tax. Also of significance is that whenever the plaintiff received a warrant he executed a receipt whereby he agreed that "no money received shall be retained by me as a fee for service, until the full amount due has been delivered to the Collector." In view of the foregoing we conclude that the plaintiff's compensation was not established by law, and to the extent that there was an implied agreement for compensation he was to receive it if, but only if, the warrant was still in his hands and he had collected the tax.

Finally the plaintiff argues that the fact that in certain cases the tax to which the warrant related was collected prior to or simultaneously with or subsequent to the recall of the warrant without a fee for the plaintiff's notice, exhibition, or delivery of the warrant, as the case may be, cannot be treated as a full payment by the taxpayer of his obligation to the city. A sufficient answer is that whether the taxpayer has discharged his obligations to the city is no concern of the plaintiff.

What has been said applies to all of the categories of the various batches of recalled warrants. Thus, in accordance with the stipulation judgment in each case is to be entered for the defendant.

*Exceptions dismissed.*
*Judgment for the defendant*
*in each case.*