Boston Retirement Board *vs.* Carolyn McCormick.

Suffolk.    March 7, 1963. — April 2, 1963.

Present: Wilkins, C.J., Spalding, Whittemore, Cutter, & Kirk, JJ.

*Retirement.    Release.*

A certain member of a city retirement system, whose employment by the city terminated by reason of a personal injury compensable under the Workmen's Compensation Act and giving her a potential claim to an accidental disability retirement allowance under G. L. c. 32, § 7, and who was not within any specific provision of c. 32 authorizing a return of accumulated deductions, was not in the circumstances entitled to be paid her accumulated deductions.    [695–697]

In the circumstances, where, upon termination of the employment by a city of a member of its retirement system by reason of a personal injury giving her a potential claim to an accidental disability retirement allowance under G. L. c. 32, § 7, the retirement board at her request, but without statutory authority and through excusable error, returned her accumulated total deductions to her and she executed and filed with the board a form whereby, "in consideration of such payment," she "surrendered" "all other rights . . . as a member of" the retirement system, she nevertheless was subsequently not barred, upon repaying to the system the accumulated total deductions with interest, from making and prosecuting her claim to an accidental disability retirement allowance. [698–699]

Bill in equity filed in the Superior Court on January 4, 1963.

The suit was reported by *Cahill,* J.

*William H. Kerr* for the plaintiff.

*Laurence S. Locke* for the defendant.

Cutter, J.  The board seeks declaratory relief.  The parties have agreed that the facts alleged in the bill are all the material facts and that inferences may be drawn as if the bill were a case stated.  The case has been reported without decision.  Mrs. McCormick became a thirty-hour-a-week floor-duty nurse in the Boston hospital department and a member of the Boston retirement system, effective June 2, 1954.  See G. L. c. 32, §§ 1–28; St. 1947, c. 520.  She

received, through exposure to tuberculosis bacilli in the course of her employment during July and August, 1955, an injury compensable under the workmen's compensation provisions of G. L. c. 152, liability for which was redeemed by the city by a lump sum payment in March, 1960.

On October 5, 1955, Mrs. McCormick was granted a leave of absence for illness to March 5, 1956, which was successively extended to March 7, 1958. When she then neither returned to work nor requested a further leave, "she was automatically terminated as a . . . nurse."

On a prescribed form[1] filed with the board about May 6, 1958, she "requested that she be paid the amount of her accumulated total [retirement] deductions." This payment was made about May 19, 1958.

At the time she filed this form with the board, "she had become totally and permanently incapacitated for further duty before attaining the maximum age for her group by reason of a personal injury sustained as a result of, and while in the performance of, her duties at a definite place and at a definite time after the date of her becoming a member, without serious and wilful misconduct on her part." About August 2, 1960, her counsel wrote to the board claiming for her accidental disability "retirement benefits for total and permanent incapacity . . . and requesting [an] official application form." The board received "a formal application for an accidental disability retirement, which . . . [Mrs. McCormick] withdrew on July 6, 1961, to eliminate questions as to the necessity of a tender of repayment

---

[1] The form told her, "You are eligible for a refund of your total accumulated deductions . . . 1. If you permanently leave the service and do not intend to take a position in . . . Massachusetts subject to" G. L. c. 32, §§ 1–28. She signed an application on the form, reading in part, "I . . . having permanently left the service hereby request the payment to me of the accumulated total deductions now standing to my credit in the annuity savings fund of the retirement system. In consideration of such payment, all other rights . . . to which I was entitled as a member of such retirement system are hereby surrendered and I understand that upon such payment my membership in the retirement system will terminate. . . . I . . . resigned from my position as nurse in the B[oston] [C]ity H[ospital] . . . . The date of my termination of service was 3-7-58 . . . . It is not my present intention to accept a position . . . which would entitle me to become a member of any other similar contributory retirement system maintained within the commonwealth by public funds. . . ."

of refunded accumulated total deductions as condition precedent to application.'' On that same day, she (without having become again employed by the city) "tendered to the . . . [board] : (1) the amount of her accumulated total deductions which had been paid to her . . . about May 19, 1958, together with . . . interest; and (2) an application for an accidental disability retirement allowance.'' The board has "refused to accept such tenders contending . . . that it is neither mandatory upon . . . [it], nor within . . . [its] power, to accept such tenders.'' The board further contends that Mrs. McCormick is barred from any retirement allowance by the instrument executed by her on May 6, 1958.

General Laws c. 32, § 7 (as amended through St. 1951, c. 545, § 1),[2] provides for an accidental disability retirement allowance made up of two principal components. The first is a yearly *pension* "equal to two thirds of the average annual rate of . . . [the] regular compensation'' for the twelve months period for which the member last received regular compensation prior to his or her retirement. See § 7 (2) (a) (ii). There is an additional pension where there are dependents of the member. See § 7 (2) (a) (iii). The other principal component is an *annuity* equal to the regular life annuity specified in § 12 (2), option (a), clause (i), the value of which ''on the date such allowance becomes effective shall be the actuarial equivalent of . . . [the member's] accumulated regular deductions, if any, on such

---

[2] Section 7 reads in part as follows: '' (1) . . . Any member in service . . . who becomes totally and permanently incapacitated for further duty before attaining the maximum age for his group by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties at some definite place and at some definite time on or after the date of his becoming a member . . . without serious and wilful misconduct on his part, upon his written application on a prescribed form filed with the board . . . shall be retired for accidental disability . . . . Except as provided for in subdivision (3) of this section, no such retirement shall be allowed unless such injury was sustained or such hazard was undergone within two years prior to the filing of such application or, if occurring earlier, unless written notice thereof was filed with the board by such member or in his behalf within ninety days after its occurrence. . . . (3) . . . (a) Lapse of time or failure to file notice of an injury sustained or a hazard undergone as provided for in subdivision (1) of this section . . . shall not be a bar to proceedings . . . if such member received payments on account of such injury or hazard under the provisions of chapter one hundred and fifty-two . . . .'' The section has since been amended by St. 1958, c. 321, §§ 12–16, and by St. 1962, c. 81.

date." See § 7 (2) (a) (i). Pensions to members are paid from the pension fund of the system. See § 22 (3). The annuity is paid from the annuity reserve fund existing under § 22 (2), to which upon the retirement of a member, see § 22 (1), clause (1), his accumulated total deductions shall be transferred from his account in the system's annuity savings fund.

The present controversy appears to have arisen not only because of the great complexity of the relevant provisions of c. 32, but also because, when Mrs. McCormick requested the return of her accumulated total deductions, she had not claimed an accidental disability retirement allowance. The agreed facts indicate that she then could reasonably have claimed one. Whether either she or the board then knew of her potential claim does not appear. In view of the substantial pension to which she was entitled as part of this disability retirement allowance, we infer that, if she had then known of her claim and of her total disability, Mrs. McCormick would have sought the retirement allowance rather than the return of her accumulated deductions. We must determine whether under c. 32 the action which she then took now bars her (without consideration of possible relief for mutual mistake, see *Reggio* v. *Warren,* 207 Mass. 525, 533–538; see also *Piea Realty Co. Inc.* v. *Papuzynski,* 342 Mass. 240, 248) from obtaining at least the pension portion of her disability allowance.

Mrs. McCormick under § 3 (1) (a) (i) continued to be a "member in service" of the retirement system during her leaves of absence. See *Gannon* v. *Contributory Retirement Appeal Bd.* 338 Mass. 628, 631. See also § 14 (1) (a) and (c). Upon the automatic termination of her employment on March 7, 1958 (as a "member in service whose employment has been terminated . . . entitled to any . . . potential retirement allowance or to a return of . . . [her] accumulated total deductions" under §§ 1–28), she became a "member inactive." See c. 32, § 3 (1) (a) (ii). This description of her status in the system does not "serve to deprive . . . [her] of any . . . rights or privileges" under

§§ 1–28.  See § 3 (1) (c), which also provides that a "member shall retain . . . membership in the system so long as . . . living and entitled to any . . . potential benefit therein."  Upon the agreed facts, Mrs. McCormick was at least entitled to a "potential retirement allowance."

For another reason, also, Mrs. McCormick was entitled to remain a member of the system.  On May 6, 1958, when she asked for the return of her accumulated total deductions, she was entitled to workmen's compensation payments.  The city's liability for these was redeemed by a lump sum payment in March, 1960.  The amount of this payment does not appear in the record, but the board, in its brief, assumes (although it does not expressly concede) that, even as late as July 6, 1961, the period over which the lump sum was to be allocated pursuant to § 14 (1) (c), had not expired.  During that period she retained by virtue of § 14 (1) (a), first paragraph, "all the rights of a member in service" until a retirement allowance should become effective for her.[3]

Certain situations in which a member of a system may obtain return of her accumulated total deductions are listed in § 10 (4), as it appears in St. 1945, c. 658, § 1.[4]  The second sentence of § 10 (4) affirmatively authorizes certain members to be paid the amount of their accumulated total deductions.  Mrs. McCormick is not one of these nor is she a person mentioned in the last sentence of § 10 (4).  Because

[3] We assume that the last sentence of § 14 (1) (a), first paragraph inserted by St. 1958, c. 404, § 1, after the refund to Mrs. McCormick, is not applicable to that refund.  That last sentence purports to prohibit such a refund to a member entitled to workmen's compensation benefits.

[4] Section 10 (4) reads: "Any retirement allowance granted to a member in accordance with the provisions of sections one to twenty-eight inclusive, except as otherwise provided . . . [in § 25 (3) relating to rights of veterans] shall be in lieu of the payment to him of his accumulated total deductions.  Any member not entitled to a retirement allowance . . . [under §§ 1–28] or any member entitled to a retirement allowance as provided for in . . . [§ 10, the earlier provisions of which are not relevant] who has not attained age fifty-five and whose allowance has not become effective, shall be paid the amount of his accumulated total deductions . . . upon his written request therefor on a prescribed form filed with the board on or after the date of his termination of service . . . [with an exception not relevant].  No member entitled to a retirement allowance . . . who has attained age fifty-five shall be eligible to receive a return of his accumulated total deductions except as provided" in § 13 (2), relating to small allowances, or in § 25 (3) relating to veterans.

she was not one of the persons expressly entitled under § 10 (4) to a return of the accumulated deductions, Mrs. McCormick argues that she (as a member entitled to an accidental disability retirement allowance) was impliedly excluded from those who could be paid the amount of her accumulated deductions in the absence of an affirmative provision authorizing such a payment to one in her position. See *Cogan* v. *Cambridge Retirement Sys.* 294 Mass. 577, 579–581, which strongly suggests that a member of a comparable system could not withdraw from the system or withdraw his accumulated total deductions, except in accordance with a specific statutory provision.

We hold that the sections of c. 32 already mentioned impliedly prohibit the payment of their accumulated total deductions to members of retirement systems except in accordance with an express statutory authorization. Section 11 (1) authorizes such a payment only as specified in certain other sections, of which those pertinent are § 10 (4) and § 13 (2) (b). Section 10 (4), see fn. 4, *supra,* does not provide such authority. Section 13 (2) (a), as amended through St. 1957, c. 536, authorizes such a payment if the amount of the member's annual retirement allowance would be less than $360. Section 13 (2) (b), as so amended, authorizes such a payment if the annual retirement allowance would be less than $600, and if application therefor is filed "prior to the date the first payment of such allowance would otherwise become due." We infer that Mrs. McCormick's accidental disability retirement allowance would exceed these amounts. Even that part of the allowance based upon a pension equal to two thirds of her annual nurse's salary payable under § 7 (2) (a) (ii) from the system's pension fund, could hardly have been less than $600, wholly apart from her annuity reserve fund. See § 7 (2) (a) (i). Accordingly, upon the stipulated facts, the board had no authority on May 19, 1958, to pay Mrs. McCormick her accumulated total deductions, since she was in fact entitled to a potential accidental disability retirement allowance at the time of her application for the payment on May 6, 1958.

That the board did make such a payment was excusable error, if, as the record strongly indicates, the board had no cause to know of Mrs. McCormick's potential claim and reasonably thought that it was refunding the accumulated deductions to an employee who was resigning and who had no claim to a retirement allowance.[5]   The statute is designed to give each member specified retirement benefits in accordance with standards stated in the statute.   We see nothing in the statute which prevents a member from receiving those benefits because of an honest error which can readily and fairly be corrected.

The record does not require us to treat the instrument (see fn. 1, *supra*), filed by Mrs. McCormick as a conscious settlement by her with the board by a release (cf. *Finer* v. *Boston*, 334 Mass. 234, 240) of a doubtful claim to a disability allowance (pension and annuity) given in exchange for the payment of her accumulated total deductions to which she would have been entitled if she had no claim to a disability allowance.   We need not now consider the effect of such a conscious settlement of doubtful claims.   The prescribed form, to be sure, contained language of surrender of rights and privileges under the retirement system. Authority to prescribe the form "to effectuate the purposes of" §§ 1–28, was given to the Commissioner of Insurance under § 21 (4), as appearing in St. 1945, c. 658, § 1.   This authority cannot be exercised to allow repayment of accumulated total deductions to members in cases where the statute does not expressly permit such repayments.   In cases of permitted payments, the language of surrender in the form may well be appropriate, but it should not prevent correction of an unauthorized, erroneous repayment where the circumstances do not indicate that the document

---

[5] The statute recognizes that, in a complicated system of this type, errors are bound to occur.  See § 20 (5) (c), as appearing in St. 1945, c. 658, § 1, which provides that the "board, upon discovery of any error in any record of the system, shall, as far as practicable, correct such record.  If any such error results in the receipt from such system by any member . . . of more or less than he would have been entitled to receive had the records been correct, payments shall, as far as practicable, be adjusted in such manner that the actuarial equivalent of the benefit to which he was correctly entitled shall be paid."

was carrying out the intentional adjustment of a doubtful controversy.[6]

We hold that, in the circumstances, Mrs. McCormick is not barred by the application of May 6, 1958, from applying for an accidental disability retirement allowance or from receiving such an allowance, if her application is prosecuted and allowed in usual course. The board is not precluded from accepting her tender of a refund with interest of her accumulated total deductions.

The case is remanded to the Superior Court for the entry of a final decree declaring the rights of the parties in a manner consistent with this opinion.

*So ordered.*

---

[6] It may be noted that the instructions at the top of the form are ambiguous. Mrs. McCormick was informed that she was eligible for a refund of her deductions if she was permanently leaving the service and did not intend to take another position subject to §§ 1–28. She was not told that she had no right to such a refund if she possessed a claim for a retirement allowance or if she was still entitled to workmen's compensation benefits. Members of a public employees' retirement system existing under intricate statutory provisions, frequently amended, must rely, as a practical matter, to a considerable extent on guidance by those administering the system. Here the instructions were inadequate to one in Mrs. McCormick's position. The obscurity of the instructions may partly explain her action.