FALMOUTH HOSPITAL *vs.* COMMISSIONER OF PUBLIC WELFARE.

Barnstable. November 19, 1986. — February 25, 1987.

Present: KASS, KAPLAN, & WARNER, JJ.

*Public Welfare*, Medical assistance benefits. *Interest. Hospital. Contract*, With Commonwealth. *Commonwealth*, Contracts.

The Commonwealth's obligation pursuant to G. L. c. 118E to make medical assistance payments was properly characterized as contractual in nature, with the effect that the Commonwealth was liable for interest on such monies detained beyond the proper time for their payment to a provider of medical services. [547-550]

The Commonwealth was liable for interest on public assistance monies detained beyond the proper time for their payment to a provider of medical services, notwithstanding any genuine doubt the Commissioner of Public Welfare may have had as to whether the Commonwealth owed the sum in question. [550]

With respect to public assistance monies detained by the Commonwealth beyond the proper time for their payment, a hospital was entitled to interest commencing at least as early as the date the Department of Public Welfare initially denied the relevant claim for medical assistance, and ending on the date of a stipulation fixing the sum for which the Commonwealth would be liable. [550-551]

CIVIL ACTION commenced in the Superior Court Department on April 8, 1981.

The case was heard by *Elizabeth J. Dolan*, J.

*Suzanne E. Durrell*, Assistant Attorney General, for the defendant.

*Lee M. Berger* for the plaintiff.

KAPLAN, J. Barbara F. Taft was admitted to Falmouth Hospital on October 28, 1980, and was cared for there until her death on January 2, 1981. On November 5, 1980, the hospital, as a licensed provider of medical services, had applied to the Department of Public Welfare for medical assistance

benefits in respect to this patient pursuant to G. L. c. 118E, § 8.[1] On January 26, 1981, the department denied the hospital's claim on the ground that Taft was ineligible for assistance: she had resources in excess of $2,000 — a bank account of $4,295.69 — and, according to the department, she must "spend down" before she could qualify as eligible (see n.2 below). The hospital filed its administrative appeal on February 11, 1981. See G. L. c. 118E, § 22. This was denied on March 9, 1981.

Thereupon, on April 8, 1981, the hospital commenced the present action by filing in Superior Court its complaint for judicial review under G. L. c. 30A, § 14. A motion on the part of the hospital for summary judgment was denied without prejudice, evidently because it was expected that an authoritative decision would be forthcoming. This occurred on April 9, 1985, in the case of *Haley* v. *Commissioner of Pub. Welfare*, 394 Mass. 466, holding that a patient in Taft's position was immediately eligible, with "spend down" to occur as indicated in the margin.[2] The result in the present situation was that, of the hospital's bill of $12,623.55, the patient was liable for $2,295.69 (the excess of her bank account over $2,000), and the Commonwealth was liable for the remainder of the bill, $10,327.86. The hospital and the department entered into a stipulation to this effect on October 8, 1985.

---

[1] Benefits, if allowed, are ordinarily paid for services furnished after the date of the application and during the three months preceding the month of the application. See G. L. c. 118E, § 14; 106 Code Mass. Regs. §§ 502.120, 502.160 (1983); *Haley* v. *Commissioner of Pub. Welfare*, 394 Mass. 466, 468 (1985).

[2] The department had taken the position that where an otherwise eligible patient had resources over $2,000, he must "spend down" to $2,000 before he would be accepted for benefits. The benefits would then be paid only in respect to services following the date of completion of the spend down. Thus the patient, remaining liable for the provider's services prior to the spend down, might exhaust his $2,000 in paying the provider. Under the *Haley* case the patient is accepted despite having resources in excess of $2,000, but in the amount of the excess he is liable to the provider for services. The problem of spend down revolved about G. L. c. 118E, § 10(3), 106 Code Mass. Regs. § 505.110 (1983), and 42 U.S.C. § 1396a (a) (17) (A-C) (1982).

The stipulation left open what, if any, interest was owing by the Commonwealth on the $10,327.86 principal sum, and that question was put to the court by motion. On December 23, 1985, a judge of the Superior Court decided, with opinion, that the hospital was entitled to prejudgment interest at the rate of 12% for the period from January 26, 1981 (departmental denial of assistance) to October 8, 1985 (stipulation). Both parties appeal. The department contends that no interest was owing,[3] while the hospital contends that the interest should run until December 23, 1985. In our view both appeals fail and the decision below should be affirmed.

Following rather clear authority (to be cited below), the judge reasoned that under statute and regulations there was a contractual relationship between the hospital-provider as "vendor" of services and the department (i.e., the Commonwealth) as "purchaser,"[4] the rates of pay being established through separate rate setting processes. As the Commonwealth's obligation arose out of this contractual arrangement, interest was due for delay of payment as it would be in a private transaction. This seems to us the correct framework of decision, which we elaborate somewhat below, adding little to the substance of the judge's opinion.

Referring to the general proposition that the Commonwealth may dictate the terms on which it chooses to forgo its sovereign immunity, see *C & M Constr. Co.* v. *Commonwealth*, 396 Mass. 390, 392 (1985), the Commissioner argues that no interest is owed because the medical assistance statute, G. L. c. 118E, does not provide for interest. This argument is untenable. It has been decided long since that, without explicit particular statutory provision, the Commonwealth is subject to liability for interest on its commitments of a contractual nature. The proposition is regularly assumed. See *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare*, 359 Mass. 206, 208

---

[3] But if interest was owing the department would have it start on March 9, 1981 (administrative appeal denied).

[4] The vendor-purchaser terminology is used in the cases, e.g. *Sargeant* v. *Commissioner of Pub. Welfare*, 383 Mass. 808, 813 (1981).

(1971); *Monadnock Display Fireworks, Inc.* v. *Andover,* 388 Mass. 153, 156-157 (1983).⁵ Express statutory provision would indeed be required to justify a recovery of interest against the Commonwealth on a claim for unemployment compensation (see *Broadhurst* v. *Director of the Division of Employment Security,* 373 Mass. 720 [1977]), or on a claim by the dependents of a victim of violent crime (see *Gurley* v. *Commonwealth,* 363 Mass. 595 [1973]), but that is because these liabilities are properly characterized as noncontractual; the distinction is noted in the cited cases denying interest. See 373 Mass. at 727; 363 Mass. at 600.⁶

The title "contractual" can hardly be gainsaid in cases like the present where the provider has rendered services under what amounts to a fees schedule. We observe that denial in such instances of interest for delayed payment would have the effect of subverting the established prices themselves (see *J. J. Struzziery Co.* v. *A. V. Taurasi Co.,* 342 Mass. 113, 115-116 [1961]), and, in the long run, might encourage attempts by the providers to inflate their claims in order to make up for possible anticipated delays (cf. *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare,* 359 Mass. at 209); thus the advantages of "close" pricing could be lost.

The doctrine regarding interest on contractual claims against the Commonwealth has been described in the following familiar passage of the *Massachusetts Gen.* case dealing with medical assistance, 359 Mass. at 209 (read "Falmouth Hospital"

---

⁵ The proposition has an analogue in private law, where liability for breach of contract may include interest, although the contract makes no mention of interest. See *C. & R. Constr. Co.* v. *Commonwealth,* 334 Mass. 232, 233-234 (1956).

Sometimes the Commonwealth's liability for interest on contractual obligations is related to G. L. c. 258, § 12, although that statute simply vests jurisdiction of claims against the Commonwealth in the Superior Court. See *Sargeant* v. *Commissioner of Pub. Welfare,* 383 Mass. at 814.

⁶ Similarly, in *C & M Constr. Co.* v. *Commonwealth,* 396 Mass. at 391-392, there was no liability for postjudgment interest (during the time required for the appropriation of funds to satisfy the judgment). Such putative liability was conceived to be noncontractual although the claim underlying the judgment was contractual in nature.

for "M.G.H.," and "Commissioner" for "Boston department"): "In these cases money was owed by the Boston department to M.G.H. either on an actual or implied contract, or a statutory liability, which gave rise to a contractual relationship when M.G.H. rendered services with the Boston department's knowledge or approval, or in circumstances which bound it to pay for them. There was in each instance a detention of money, beyond the reasonable time which the statutes requiring payment to M.G.H. fairly should be interpreted as contemplating. Eventually M.G.H. was forced to take an administrative appeal in order to collect the principal sum due. Such an unreasonable detention ordinarily gives rise to a liability for interest, at least from the date of the writ (or other initiating document), in an appropriate proceeding by the creditor to recover the indebtedness." For additional applications of the doctrine, see *Sargeant* v. *Commissioner of Pub. Welfare,* 383 Mass. 808, 821 (1981) (medical assistance); *Perkins Sch. for the Blind* v. *Rate Setting Comm'n,* 383 Mass. 825, 831 (1981) (educational assistance);[7] *Addison Gilbert Hosp.* v. *Rate Setting Comm'n,* 397 Mass. 56, 59 (1986) (medical assistance).

The defendant Commissioner tries to avoid the doctrine and the decisions, but the distinctions he suggests are entirely factitious. The agencies involved in the *Massachusetts General* and *Sargeant* cases, says the Commissioner, had initially expressed agreement to the charges claimed by the providers, and the proceedings that followed could be viewed as attempts to enforce those agreements; this specific consensual element, he says, was lacking in the present case. We answer that it is enough to find "a statutory liability, which [gives] rise to a con-

---

[7] In *Perkins,* the school appealed a rate determination of the Rate Setting Commission to the Division of Hearings Officers which raised the rate (retroactively). This rate, as applied to the school's costs, became payable by the Commonwealth (Department of Education). Under the statute (G. L. c. 6A, §§ 32, 35, 36) fixing the Commonwealth's contractual arrangement with the school as provider, the Commonwealth was not chargeable with interest if it duly paid the established rates, whether initial or revised. However, the Commonwealth was chargeable with interest for delays in the divisional appeal process, without fault of the school, which delayed payments to the school beyond the time contemplated by the statute.

tractual relationship" and a subsequent "detention of money" beyond the proper time for payment (see the quotation above). In fact, the consensual element referred to was lacking with respect to one of the several claims in the *Massachusetts Gen.* case (see 359 Mass. at 207), and lacking also in the *Perkins* and *Addison Gilbert* cases.

Again, the Commissioner says he was in genuine doubt about "spend down" and the running of interest should be stopped until the doubt was removed by the *Haley* decision (we need make no point of the fact that the stipulation came six months after *Haley*). Like other litigants, the Commissioner must bear the burden of his mistaken forecasts; mistakes of one kind or other are often at the bottom of delays of payment; and we may refer to the *Addison Gilbert* case as an example of a mistake, comparable to the Commissioner's doubt and mistake about "spend down," that delayed payment of the sums justly due and resulted in an interest charge.[8]

Concluding that Falmouth Hospital is entitled to interest, we have next to find the appropriate period of its accrual. *Massachusetts Gen.* approved as a starting point the date on which the hospital sought administrative review, this constituting "an unequivocal demand for payment of the [principal] amount owed." 359 Mass. at 209-210. The court did not have to consider, and left open, the question whether interest could have been claimed from the date of a formal demand prior to the institution of administrative review. In the *Sargeant* case, interest was allowed from the time of such demand. 383 Mass. at 821. In the present case, the hospital was content to accept a starting date of January 26, 1981, when the department first

---

[8] The mistake in *Addison Gilbert* lay in the Commissioner's failure to seek and secure the approval of Federal authority for promulgating flat fees for "administratively necessary days" (i.e., holding days: patient scheduled for transfer from hospital to a lower level facility, such as a nursing home, continues in hospital because no bed available at transferee facility; see 397 Mass. at 57). The earlier established fees continued valid and interest was due on the delayed difference. Relevant was 42 U.S.C. § 1396a(b) (1982), as explained in a prior decision, *Addison Gilbert Hosp.* v. *Rate Setting Comm'n,* 390 Mass. 17 (1983).

denied assistance, although it might have urged an earlier date of demand.

It is "prejudgment interest" that is being claimed, meaning, in substance, interest to the date when the principal amount was legally settled. The judge could hold in the circumstances of this case that that time came when the stipulation was filed on October 8, 1985. The hospital overreaches when it seeks to extend the period to December 23, 1985, when a formal "Judgment (On Stipulation)" was entered, which, however, allowed interest only to the date of the stipulation. The rate of interest, 12%, is not disputed. See G. L. c. 231, § 6C.

*Judgment affirmed.*