CODMAN & SHURTLEFF, INC. *vs.* COMMISSIONER OF THE
DEPARTMENT OF EMPLOYMENT AND TRAINING & others.[1]

No. 92-P-1846.

Norfolk. February 7, 1994. - April 7, 1994.

Present: SMITH, KAPLAN, & IRELAND, JJ.

*Commonwealth*, Claim against. *Interest*. *Contract*, Implied. *Department of Employment and Training*.

In an action by an employer to recover from the Commonwealth the sum
it paid pursuant to an illegal assessment by the Department of Employ-
ment and Training purporting to act under the unemployment compen-
sation law, the employer's recovery included prejudgment interest on
the sum illegally detained. [332-334]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 28, 1990.

The case was heard by *Patrick J. King*, J., on motions for
summary judgment, and entry of judgment was ordered by
*Richard G. Stearns*, J.

*Margaret Monsell*, Assistant Attorney General, for the
defendants.

*Monica Levine Lacks* for the plaintiff.

KAPLAN, J. In December, 1986, the plaintiff Codman &
Shurtleff, Inc. (C & S), a subsidiary of Johnson & Johnson,
had 800 employees and $60 million in revenues; Magnetic
Corporation of America (MCA), another subsidiary, had but
one employee and was no longer in business. On December
29, 1986, the two corporations were combined. C & S con-
tinued to do business under its own name, the MCA em-
ployee being added to its payroll. On grounds that need not
be recounted here, the Department of Employment and
Training (DET) decided that MCA rather than C & S was

---

[1]The Department of Employment and Training and the Commonwealth.

the "successor" employer for purposes of the unemployment compensation law,[2] with the result, according to DET, that C & S's $650,000 positive account balance with DET (and a 1.7 percent experience rating) was converted into an account deficit of $392,228 (and a 5.4 percent experience rating). On June 10, 1988, DET informed C & S that it owed DET $393,565.99. After futile administrative proceedings, C & S on April 20, 1989, paid in $419,222.72, representing the total assessments, contributions, and interest then claimed to be owed. About the same time, C & S filed a request for refund under G. L. c. 151A, § 18. The request was denied, and the present action was brought in Superior Court on August 28, 1990.

Upon cross-motions for summary judgment, the court held that DET had acted illegally in holding that MCA was the "successor." Therefore, C & S's account surplus was reinstated, reduced by the account deficit of MCA, now recognized to have been the "transferring employer."[3] The amounts illegally assessed by DET (totalling more than $600,000 by reason of later assessments and interest) were ordered to be applied as credits toward C & S's future unemployment compensation contributions.[4] On the amounts thus credited, interest was allowed (and to be similarly credited). The interest, running from August 28, 1990, the date of filing of the complaint, to September 29, 1992, when judgment was entered (thus "prejudgment interest") came to $150,224.05.

DET appeals from so much of the judgment as allows C & S interest on the principal sum recovered.

1. The Commonwealth consents to be sued to the extent that a statute says so in terms or by implication. See *C. & R. Constr. Co.* v. *Commonwealth*, 334 Mass. 232, 232-234 (1956); *Ware* v. *Commonwealth*, 409 Mass. 89, 91 (1991). C & S pointed to G. L. c. 151A, § 18, as amended through

---

[2]The pertinent provision was G. L. c. 151A, § 14(*n*)(1).

[3]C & S's experience rating was reinstated retroactively at 1.8 percent (as adjusted for recent experience).

[4]C & S acquiesced in this crediting in lieu of payment in cash.

St. 1990, c. 177, §§ 271-273 (reproduced in Appendix hereto), as the Commonwealth's consent to be sued for interest in the circumstances at bar, but such a reading is only mildly persuasive. By the first paragraph of § 18, the commissioner, on finding an overpayment by an employer, adjusts the account, but without interest. If the commissioner refuses an adjustment, the employer under paragraph two may commence a civil action against him, but nothing is said there about interest. In case of underpayment by an employer, the commissioner by paragraph three may require the deficit to be made good, with interest. Then comes paragraph four: "Interest under this section shall not be exacted unless such interest amounts to ten dollars or more." The commissioner says this merely modifies paragraph three. C & S contends that as a free-standing provision applicable to the "section," the words should be taken to indicate that interest is chargeable when the employer succeeds in the civil action mentioned in paragraph two.[5]

2. The question whether G. L. c. 151A, § 18, itself entitles C & S to interest on the principal sum may be left unanswered. As the judge below remarked, while that statute does not permit the commissioner to award interest when acting on an employer's application for upward adjustment, "it does not so restrict the court." C & S looks to G. L. c. 258, § 12, set out in the margin.[6] This provision, although seemingly vesting jurisdiction in the Superior Court over claims against

---

[5]In the way of statutory analysis, the commissioner tries to make something of an amendment of § 18 in 1979 by St. 1979, c. 642, which substituted "a civil action" for "an action of contract" in the text that allows an employer to sue for a refund of overpayments. The change was probably made to conform the nomenclature to rule 2 of the Massachusetts Rules of Civil Procedure, and is thus without bearing on the interest question. Cf. *First Natl. Ins. Co. of America* v. *Commonwealth*, 376 Mass. 248, 250 (1978).

The commissioner also attempts to raise an inference from a statutory change in 1941. Compare G. L. c. 151A, § 8, as appearing in St. 1937, c. 421, § 1, with G. L. c. 151, § 18, as inserted by St. 1941, c. 685; and see *Griswold* v. *Director of the Div. of Employment Security*, 315 Mass. 371 (1944).

[6]"Claims against the commonwealth, except as otherwise expressly provided in this chapter or by any general or special provision of law, may be

the Commonwealth, such as they might be, has been interpreted to expose the Commonwealth, by its assumed consent, to liability on claims against it that are contractual in character or that arise in a contractual setting. See *First Natl. Ins. Co. of America* v. *Commonwealth*, 376 Mass. 248, 250-251 (1978). Take a claim against the Commonwealth for the return of taxes illegally assessed and paid under protest, as in *Chilton Club* v. *Commonwealth*, 323 Mass. 543 (1949). There Chief Justice Qua recognized the historic association of such a claim with the common count for money had and received (*id.* at 546), a form of action "quasi ex contractu."[7] Cf. *J.A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789 (1986). In the present case the claim against the Commonwealth was of the same order, although the assessments would not be called a tax. Now when there is a right to the return of a principal sum illegally detained, and the return is delayed over a period of time, the creditor normally becomes entitled to interest, and the obligation to pay interest is contractual in character just like the obligation to pay principal. See *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare*, 359 Mass. 206, 209 (1971). Contrast *Broadhurst* v. *Director of the Div. of Employment Security*, 373 Mass. 720, 725-727 (1977).

The commissioner proposes a distinction. He observes that in several cases where G. L. c. 258, § 12 (or predecessor legislation), was used by creditors of the Commonwealth to sue for and recover interest, the underlying transactions were contractual in the stricter meaning of some antecedent consensual arrangement or framework. Typical is *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare, supra.* The hospital furnished medical care to recipients of public assistance — the hospital was a seller of services and the government agency the buyer. The agency delayed unduly in paying the hospital's bill, and the hospital sued for and recovered

---

enforced in the superior court." G. L. c. 258, § 12, as inserted by St. 1979, c. 1, § 1.

[7]An expression adopted by Lord Mansfield, C.J., in *Moses* v. *Macferlan*, 97 Eng. Rep. 676 (K.B. 1760).

interest for the period of the delay, although there was no explicit agreement between the parties as to any interest obligation. To like effect, see *C. & R. Constr. Co.* v. *Commonwealth*, 334 Mass. at 233; *Sargeant* v. *Commissioner of Pub. Welfare*, 383 Mass. 808, 813-814 (1981); *Perkins Sch. for the Blind* v. *Rate Setting Commn.*, 383 Mass. 825, 831-834 (1981); *Falmouth Hosp.* v. *Commissioner of Pub. Welfare*, 23 Mass. App. Ct. 545, 547-549 (1987). Such difference as the commissioner perceives between interest upon a debt in the narrower sense, and interest upon money wrongfully detained, seems to us merely factitious, cf. *Falmouth Hosp.* v. *Commissioner of Pub. Welfare*, 23 Mass. App. Ct. at 549; indeed, the moral case for the creditor is at least as strong in the latter situation as the former.

*Judgment affirmed.*

APPENDIX.

General Laws c. 151, § 18, as amended through St. 1990, c. 177, §§ 271-273, provides:

"If not later than three years after the date of payment of any amount as contributions, payments in lieu of contributions, interest, penalty, or fine, an employer who has made such payment shall make application for an adjustment thereof in connection with subsequent contribution, interest, penalty, or fine payments, or for a credit thereof in connection with payments in lieu of contributions, interest, penalty, or fine payments or for a refund thereof because such adjustment or credit cannot be made, and if the commissioner shall determine that payment of such contributions, payments in lieu of contributions, interest, penalty or fine was erroneous, the commissioner shall allow such employer to make an adjustment of the amount erroneously paid, without interest, in connection with subsequent contribution, interest, penalty or fine payment by such employer, or shall credit the employer's account with the amount erroneously paid, or if such adjustment or credit cannot be made, the commissioner shall refund from the Unemployment Compensation Fund or from the clearing account in the Unemployment Compensation Fund or from the contingent fund, as provided in sections eighteen and fifty-eight A, without interest, the amounts erroneously paid; provided that the commissioner shall not allow any adjustment in connection with subsequent contributions, for amounts of interest, penalty, or fine collected subsequent to July first, nineteen hundred and sixty-six, nor shall he refund any such payment form the Unem-

ployment Compensation Fund. For like cause, within the same period, and subject to the same conditions, adjustment, credit, or refund from the Unemployment Compensation Fund, the clearing account in said fund or from the contingent fund, as appropriate, may be so made on the commissioner's own initiative. Refunds of contributions, interest, penalties or fines pursuant to subsection (e) of section six shall be refunded by the commissioner in accordance with the provisions of said section, without application.

"Within nine months after the receipt by the applicant of written notice from the commissioner that he has denied an application for a readjustment, credit or a refund of any contribution, of payment in lieu of contribution, in whole or in part, which application has been filed by an applicant who has paid a contribution or payment in lieu of contribution under this chapter, such applicant, in addition to any other remedy which the applicant may have, may bring a civil action against the commissioner to recover the whole or any part of such contribution or payment in lieu of contribution. Such action may be brought in the district court department in the judicial district of which, or in the superior court department for the county in which, the employer lives or has its principal place of business, or in the municipal court of the city of Boston. In case the court shall find that the whole or any part of such contribution or payment in lieu of contribution was excessive or has been collected or imposed incorrectly or unlawfully the court shall enter judgment accordingly in favor of the applicant and against the commissioner but to be repaid out of the clearing account, and such judgment shall be so paid. No applicant shall be entitled to the remedy provided in this paragraph upon any issue which has been raised in a proceeding brought under any provision of subsection (d) of section fifteen.

"If, within three years after any contribution or payment in lieu of contribution has been paid, the commissioner shall determine that an employer has paid insufficient contributions, payments in lieu of contributions, interest thereon or penalty assessed in lieu thereof, the commissioner shall require such employer to make an adjustment thereof, with interest, in connection with a subsequent or additional payment, or shall so charge the employer's account as appropriate.

"Interest under this section shall not be exacted unless such interest amounts to ten dollars or more."