JEANNIE FEMINO HOLLSTEIN & others[1] *vs.* CONTRIBUTORY
RETIREMENT APPEAL BOARD & another.[2]

No. 97-P-1758.

Suffolk. February 22, 1999. - June 9, 1999.

Present: GREENBERG, LAURENCE, & BECK, JJ.

*Contributory Retirement Appeal Board. Administrative Law,* Judicial review,
Substantial evidence. *Public Employment,* Retirement. *Retirement. Pension.
Interest. Practice, Civil,* Interest. *School and School Committee,* Retire-
ment benefits. *Statute,* Construction.

In circumstances in which the Boston school committee had mistakenly with-
held the incorrect amount of retirement deductions from certain employees'
salaries and the Boston retirement board had corrected the error and
refunded the excess, nothing in G. L. c. 32, § 20(5)(*c*), as appearing in St.
1945, c. 658, § 1, authorized the payment of interest on the amounts
improperly withheld, where the error did not actually affect any benefits
the employees would in future be entitled to, and where there was otherwise
no contractual basis for such a claim. [110-114]

CIVIL ACTIONS commenced in the Superior Court Department
on October 15, 1995, May 29, 1996, August 29, 1996, October
24, 1996, November 12, 1996, February 19, 1997, and February
20, 1997, respectively.

The consolidated cases were heard by *Margaret R. Hinkle,* J.,
on motions for judgment on the pleadings.

*Christina C. Duddy* for the plaintiffs.

*Jane L. Willoughby,* Assistant Attorney General, for Contribu-
tory Retirement Appeal Board.

*Nicholas Poser* for Boston Retirement Board.

GREENBERG, J. The plaintiffs, ten employees of the Boston

---

[1] Nine other plaintiffs, all employees of the Boston school committee and
members of the city of Boston retirement system, filed civil actions which
were consolidated for a jury-waived trial pursuant to G. L. c. 30A, § 14,
review in the Superior Court.

[2] Boston Retirement Board.

school committee, appeal from an adverse Superior Court judgment that affirmed the decisions of the Contributory Retirement Appeal Board (CRAB) denying them interest payments on pension contributions improperly deducted from their wages.[3] In each case the defendant, Boston retirement board (board), discovered the error, corrected it by informing the committee and the city treasurer of the proper deduction, and refunded the excess. The sole issue is whether the plaintiffs are entitled to interest on these improper deductions. Rejecting the findings and conclusions of the administrative magistrate's recommended decisions in each of the cases, CRAB affirmed the board's refusal to award interest.

On judicial review, a "decision of CRAB may be set aside only if based upon an error of law or unsupported by substantial evidence." *Robinson* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 634, 636 (1985). We agree that as a matter of law CRAB correctly determined that nothing in the retirement statute, G. L. c. 32, §§ 1 et seq., provides for payment of interest on amounts constituting excessive pension deductions that are returned to the members while still in service. We affirm the judgment of the Superior Court.

The plaintiffs contend that G. L. c. 32, § 20(5)(*c*), as appearing in St. 1945, c. 658, § 1, authorizes the award of the interest they claim is due them. CRAB maintains that § 20(5)(*c*) permits it to correct errors in distribution of benefits, but no more. In pertinent part, paragraph (*c*) of § 20(5) provides that "[t]he board, upon discovery of any error . . . [that] results in the receipt from such system by any member or beneficiary of more or less than he would have been entitled to receive had the records been correct," shall, as far as practicable, adjust payments "in such manner that the actuarial equivalent of the benefit to which he was correctly entitled shall be paid."

The background and origins of this section are obscure. We have not found (or been referred to) any legislative history to explain the purpose of the 1945 revision. The only reported case mentioning the board's corrective power is *Boston Retirement Bd.* v. *McCormick*, 345 Mass. 692, 696 (1963). That case, however, sheds little light on the issue here. Carolyn McCormick, who was also a member of the Boston retirement system,

---

[3]The error in each case consisted of the city of Boston deducting an excess contribution ranging between one to three percent from each member's salary over various periods of time.

withdrew her accumulated deductions shortly after she was terminated for failure to either return to work or request a further leave after the expiration of a leave of absence for illness. *Id.* at 693. Two years later, after receiving a lump sum settlement of her workers' compensation claim, she sought to repay the sum she had withdrawn from the retirement system with interest and to claim disability retirement benefits. *Id.* at 693-694. The board refused to accept the tender of the funds. *Id.* at 694. On appeal, the Supreme Judicial Court concluded that, under the provision of c. 32 then in effect, there was no "express statutory authorization" allowing a person in McCormick's circumstances to withdraw her contributions to the system, especially since "she was in fact entitled to a potential accidental disability retirement allowance at the time of her [withdrawal]." *Id.* at 697. Hence, it was error to allow the withdrawal, and the board could correct the error by allowing the repayment. "The statute is designed to give each member specified retirement benefits in accordance with standards stated in the statute. We see nothing in the statute which prevents a member from receiving those benefits because of an honest error which can readily and fairly be corrected." *Id.* at 698. The court cited § 20(5)(*c*) in a footnote as support for the proposition that, "in a complicated system of this type, errors are bound to occur." *Id.* at 698 n.5.

Here as to the deductions themselves, the errors have been corrected. There is no dispute that § 20(5)(*c*) permits the board to correct the error by returning the excess deductions. The plaintiffs have been reimbursed. They will receive the retirement benefits to which they are entitled. A requirement to pay interest on excessive pension deductions should not be read into the statute where the Legislature did not provide for it. See *Boston Neighborhood Taxi Assn.* v. *Department of Pub. Util.*, 410 Mass. 686, 689 (1991). Chapter 32 expressly authorizes an interest-bearing remedy only in instances in which the error of the board has affected the "benefit[s]" that retired members and beneficiaries actually "rece[ive]" from the board. See G. L. c. 32, § 1 (defining "actuarial equivalent" as "any benefit of equal value" when computed at a three percent interest rate).

Here the plaintiffs have not received any payments from the Boston retirement system. Likewise, § 11(1) of c. 32 permits a return of accumulated total deductions with interest under limited circumstances, e.g., when a member of the system with creditable service of more than five years and less than ten

years voluntarily withdraws from service, he or she is entitled to a return of one-half of the interest in the deductions. The specificity of these provisions reflects Legislative disapproval of payments of interest by implication. A statute should not be interpreted to require a radical change in established policy or existing law if the act does not manifest any intent that such a change should be effected. *Dexter* v. *Commissioner of Corps. & Taxn.*, 316 Mass. 31, 38 (1944). For cases excluding interest from recovery against the Commonwealth and municipal governments, see *School Comm. of Boston* v. *Board of Educ.*, 363 Mass. 20, 31-32 (1973); *Broadhurst* v. *Director of the Div. of Employment Security*, 373 Mass. 720, 725-727 (1977); *Boston* v. *Massachusetts Commn. Against Discrimination*, 39 Mass. App. Ct. 234, 245 (1995); *Russo's Case*, 46 Mass. App. Ct. 923 (1999).

We are not unmindful that the loss of the use of the funds has value to these plaintiffs. The excess deductions occurred over as many as twenty-four years, involved sums up to $11,577, and were not always repaid promptly upon notification of error. Nevertheless, neither § 20(5)(*c*) nor any other provision of c. 32 provides the explicit statutory authorization necessary to support the payment of interest. In following the case law, we note that the Boston retirement board is not the agency that made the mistake; the mistake appears to have been that of the Boston school committee. Pursuant to G. L. c. 32, § 22(1)(*b*), the authority to withhold regular compensation lies with the school committee and the treasurer of the city of Boston, rather than with the board. As CRAB specifically found, the school committee, in fact, mistakenly took the incorrect amount from the plaintiffs' salaries. As the board is legally distinct from the city, see *Everett Retirement Bd.* v. *Assessors of Everett*, 19 Mass. App. Ct. 305, 308-309 (1985), there is no parallel identity of trusteeship or control over the accumulation of regular deductions. When the board receives funds in due course from the school committee, it may assume that the deductions were properly calculated. If, as in this case, the deductions were excessive, the school committee, not the board, must answer for that with its expense funds, not the pension funds of the system as a whole.

It remains to consider the second question raised by the plaintiffs: whether a contractual relationship arose each time one of the plaintiffs became a member of the retirement system,

i.e., to apply the principles stated in *Opinion of Justices*, 364 Mass. 847, 861 (1973). We are asked to distinguish this case from those which involve no express provision for the payment of interest because, according to the plaintiffs, the latter were "properly characterized as noncontractual." Contrast *Falmouth Hosp.* v. *Commissioner of Pub. Welfare*, 23 Mass. App. Ct. 545, 550-551 (1987).

Although it is true that a member of a retirement system possesses a reasonable expectation of retirement benefits upon superannuation, that falls short of a contractual relationship. The Supreme Judicial Court has stated:

> "It is true that a few cases that adopt the label of 'contract' have approached the terms of a retirement plan as they would a bond indenture, but closer to the realities is the view that 'contract' protects the member of a retirement plan in the core of his reasonable expectations, but not against subtractions which, although possibly exceeding the trivial, can claim certain practical justifications."

*Opinion of the Justices*, 364 Mass. at 861-862 (footnote omitted). That language suggests that G. L. c. 32, § 20(5)(*c*), does not support a claim for interest based upon the "contract" because there can be no "material expectation" generated by the retirement law for the award of interest on excessive deductions. Contrast *Dullea* v. *Massachusetts Bay Transp. Authy.*, 12 Mass. App. Ct. 82, 95 (1981); *Colo* v. *Contributory Retirement Appeal Bd.*, 37 Mass. App. Ct. 185, 189 (1994), for examples of cases where reasonably-based reliance by public employees on an express promise that pension rights were fixed gave those employees a vested right sufficient to bar reductions below the level existing when they began work.

Here, the plaintiffs do not complain of any "legislative" alteration of their rights or benefits under the statute. Section 25(5)(*c*) permits the board to make adjustments to any record so as to protect members against legislative impairment of material aspects of their benefits. It does not, as the plaintiffs suggest, create a cause of action for breach of contract each time an official implementing G. L. c. 32 makes an error. To the extent that the plaintiffs rely on *Codman & Shurtleff, Inc.* v. *Commissioner of the Dept. of Employment & Training*, 36 Mass. App. Ct. 330, 333 (1994), for the proposition that their claim is

contractual in nature, it is not apposite. In that case, the statute at issue (G. L. 151A, § 18) expressly required the department to refund employers any unemployment insurance compensation assessments it had wrongly made, thereby giving rise to a claim against it that was "contractual in nature." Also, the payments in *Codman* were made in protest as compared to the situation here, where the plaintiffs acquiesced to the deductions, giving the board no reason to question its reliance on the overpayments to finance the retirement system. Finally, *Codman* was decided prior to *Milton* v. *Commonwealth*, 416 Mass. 471, 475 (1993), in which the court held that a contractual claim does not arise under a statute unless the Legislature has explicitly expressed the intent to waive sovereign immunity and create a contractual remedy.

As the plaintiffs' claims for awards of interest are not based upon any statutory authority and have no contractual basis, the judgment is affirmed.

*So ordered.*