## Jeanie Soucy *vs.* Contributory Retirement Appeal Board & another.[1]

No. 06-P-551.

Bristol. December 4, 2006. - July 13, 2007.

Present: Perretta, Laurence, & Grasso, JJ.[2]

*School and School Committee,* Retirement benefits. *Public Employment,* Accidental disability retirement. *Contributory Retirement Appeal Board.*

Substantial evidence and the pertinent provisions of G. L. c. 32 supported the conclusion that a former teacher whose position was abolished was not entitled to accidental disability retirement benefits, where she was not a "member in service" when she left government service while still able to perform the essential duties of her position, regardless of the terms of her workers' compensation lump sum agreement. [560-565]

Civil action commenced in the Superior Court Department on November 9, 2004.

The case was heard by *D. Lloyd Macdonald,* J., on motions for judgment on the pleadings.

*Karen S. Hambleton* for the plaintiff.

*James C. O'Leary, Jr.,* for the defendant.

Perretta, J. When Jeanie Soucy, a teacher, sustained an injury while at work, she took a leave from her employment for a period just short of one year. About three and one-half years after her return to work, her teaching position was abolished. Two years later she sought but was denied accidental disability retirement benefits by the Massachusetts Teachers' Retirement Board (board). The board's denial was affirmed by an administrative magistrate of the division of administrative law appeals, the Contributory Retirement Appeal Board (CRAB), and a Superior

---

[1] Massachusetts Teachers' Retirement Board.

[2] Justice Laurence participated in the deliberation on this case prior to his retirement.

Court judge. Soucy argues on appeal that because her disability matured while she was a "member in service," as that term is defined in G. L. c. 32, § 3(1)(a)(i), she retained the right to such benefits by reason of G. L. c. 32, § 14. Based on the language of the pertinent provisions of G. L. c. 32 and the substantiated facts found by the administrative magistrate, we conclude that Soucy was not a "member in service" and affirm the judgment.

1. *Background facts.* Soucy was employed as a medical occupations instructor at a regional high school from January, 1983, to August, 2001. On January 22, 1997, she fell while on the school's premises. She thereafter suffered from back, buttock, and leg pain and took a leave from her employment. While on leave, she treated with numerous health care providers. After consulting with an orthopedic surgeon who diagnosed her as suffering from "significant degenerative disc disease," Soucy underwent spinal surgery. Although the surgery left Soucy with bladder and bowel dysfunctions, her surgeon authorized her to return to work without restrictions on her activities on December 2, 1997.[3]

Soucy returned to work on January 14, 1998, and continued to teach until August, 2001. Throughout this period, Soucy continued to experience back pain. She also found it painful and difficult to stoop to assist students at their computers and to push, pull, or lift heavy objects such as books or computers. Other teachers were sometimes required to cover her class because she was forced by her bladder dysfunction to excuse herself from her classroom.

Soucy's teaching position was eliminated and her employment terminated in August, 2001. Almost immediately after the termination of her employment, Soucy filed a claim for further workers' compensation benefits pursuant to G. L. c. 152, § 34,

___

[3]While on leave, Soucy received workers' compensation benefits under the provisions of G. L. c. 152. Based upon her claim for such benefits, an independent medical evaluation was conducted in October, 1997. The examining physician opined that Soucy needed additional time to recover from her surgery, that she was unable to return to work at that time, and that she would "end up with a significant permanent partial disability, particularly if she does not have any improvement in her bowel and bladder dysfunction."

based upon her 1997 work-related injury.[4] Her claim was resolved by a lump sum settlement agreement (lump sum agreement) approved by the Department of Industrial Accidents (DIA) on October 2, 2003. The lump sum agreement provides that the lump sum payment represents "approximately 2.5 years of total incapacity benefits, from the date [Soucy's] position was eliminated."[5]

In March of 2002, while her claim for further workers' compensation benefits was pending but not yet resolved, Soucy applied for accidental disability retirement benefits. G. L. c. 32, § 7(1). To support her claim, Soucy submitted (1) medical records dated December, 2001, and July, 2002, in which her physicians opined that Soucy was disabled as a result of the injury she had sustained on January 22, 1997, and would continue to be so for the foreseeable future; (2) the August, 2000, report of the three-member regional medical panel certifying pursuant to G. L. c. 32, § 6(3)(*a*), that Soucy was disabled and that her disability "might be the natural and proximate result" of her 1997 injury; and (3) the report of the doctor who performed an independent medical evaluation of Soucy in June, 2003, apparently in connection with her then still pending claim for workers' compensation benefits, and who concluded that Soucy's 1997 accident "render[ed] [her] previously asymptomatic degenerative disc disease symptomatic"; that "her complaints at this point are an outgrowth of her symptomatic degenerative disc disease and subsequent failed surgery"; that "[t]here is a permanent disability for activities related to high school shop instructor"; and that Soucy was "effectively totally and permanently disabled."

2. *Discussion.* Soucy contends that her claim for accidental disability retirement benefits was supported by a preponderance of the evidence, which the administrative magistrate "ignored," and which established that her disability matured while she was

---

[4]General Laws c. 152, § 34, as amended, St. 1985, c. 572, § 42, provides for benefits for a loss of earning capacity caused by a work-related injury "[w]hile the incapacity for work resulting from the injury is total . . . ."

[5]According to a handwritten and initialed notation on the lump sum agreement, the settlement redeemed liability for benefits provided under G. L. c. 152, § 36. Section 36 provides for additional compensation for specific injuries.

a member in government service. Because our analysis turns on the application of the law to the facts found by the administrative magistrate and accepted by CRAB, we first consider the administrative findings by which we are bound and then apply the law to those facts.

a. *The controlling facts.* It is well established that the administrative magistrate's findings, accepted by CRAB, must be based upon substantial evidence, that is, "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6). See *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. 246, 257 (1996). It is not our function to weigh the evidence presented during administrative proceedings. See *Houde* v. *Contributory Retirement Appeal Bd.*, 57 Mass. App. Ct. 842, 851 (2003), and cases cited.

There was evidence found credible by the administrative magistrate that Soucy was seen by her primary physician on September 11, 2001, and that her chief complaint at that time was "acute stress secondary to being laid off from her job." The physician's note from that date reflects that Soucy's "low back pain secondary to remote injury," while "[n]ot disabling," did "limit her in her activities." The administrative magistrate could reasonably credit this 2001 assessment of Soucy's condition.

While acknowledging that Soucy continued to experience pain when she returned to service in January, 1998, the administrative magistrate nonetheless concluded that her condition was not so debilitating as to render her "unable to perform the duties of her job" prior to her separation from government service. This conclusion was based upon the 2001 medical assessment that although Soucy's condition limited her activities, it was not disabling; the fact that after her return to work on January 14, 1998, Soucy worked her regular schedule and taught summer sessions until such time as her position was eliminated in August, 2001; and her testimony that she would have continued to teach but for the fact that her position was abolished.

b. *The applicable law.* Soucy's claim of entitlement to accidental disability retirement benefits is structured on various sections of G. L. c. 32. General Laws c. 32, § 7(1), as amended by St. 1996, c. 306, § 14, provides in pertinent part:

"[A]ny member in service . . . who is unable to perform the essential duties of his job and . . . such inability is likely to be permanent . . . by reason of a personal injury sustained . . . as a result of, and while in the performance of, his duties[,] . . . upon his written application . . . shall be retired for accidental disability."

A "member in service" is defined in G. L. c. 32, § 3(1)(*a*)(i), which reads, in relevant part:

"Any member [of the State retirement system] who is regularly employed in the performance of his duties, except a member retired for disability who upon partial recovery is restored to active service as provided for in paragraph (2)(*a*) of section eight.[6] Any member in service shall continue as such during any period of authorized leave of absence with pay or during any period of authorized leave of absence without pay if such leave is due to his . . . physical incapacity for duty or if such authorized leave of absence without pay is for not more than one year . . . . In any event the status of a member in service shall continue as such until his death or until his . . . *retirement, resignation . . . removal or discharge from his . . . position*" (emphasis added).

Based on *Vest* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. 191 (1996), we conclude that Soucy was not a "member in service" after her position was abolished in August, 2001. In the *Vest* case, the claimant was a police officer who was diagnosed with hypertension and diabetes but who nonetheless continued to work until he left government service for nonmedical reasons. *Id.* at 192. Five years later, he applied for accidental disability retirement benefits. *Ibid.* Upon review of his medical records, a regional medical panel concluded that it was unable to certify that he was disabled at the time of his departure from government service. *Id.* at 192-193. On appeal from a Superior Court judgment affirming the denial of the claimant's application for accidental disability retirement benefits, the court stated,

---

[6]General Laws c. 32, § 8(2)(*a*), pertains to the evaluation and re-examination of members retired for disability and is irrelevant to the present dispute.

> "The term 'member in service,' as defined by G. L. c. 32, § 3(1)(*a*)(i) . . . , is a member of the retirement system 'regularly employed in the performance of his duties.' Giving tenses their ordinary significance, the statute, when it says, 'shall be retired,' contemplates retirement *following* manifestation of disabling disability" (emphasis in original).

*Id.* at 193.

As determined in the instant case by the administrative magistrate on the substantial evidence before her, Soucy was able "to perform the essential duties of her job" at the time of her separation from government service in August, 2001. At that time she became a "member inactive" within the meaning of G. L. c. 32, § 3(1)(*a*)(ii), that is, she became a member in service "whose employment has been terminated and who may be entitled to any present or potential retirement allowance or to a return of his accumulated total deductions." See *ibid.*, wherein the court stated that it is a "settled principle that, after the end of active service, an employee has the status in the State retirement system of a 'member inactive.' "

Seeking to distinguish her claim from that rejected in the *Vest* case, Soucy argues that by reason of her workers' compensation lump sum agreement dated October 3, 2003, and the provisions of G. L. c. 32, § 14(1)(*a*) and (*c*), she was a "member in service" at the time her teaching position was abolished in August, 2001. As pertinent to Soucy's argument, § 14(1) reads:

> "Retention of Rights of a Member in Service. (*a*) Any employee who was a member in service at the time of sustaining an injury . . . on account of which he becomes entitled to payments under the provisions of [G. L. c. 152] shall, during the period while he is receiving weekly payments for total incapacity . . . or during any period . . . represented by the allocation of the amount of any lump sum settlement payable . . . to him under . . . [G. L. c. 152, § 48,] in lieu of such weekly payments . . . retain all the rights of a member in service while he is living, unless and until a retirement allowance becomes effective for him under the provisions of sections one to twenty-eight, inclusive."

Consistent with the mandate contained in G. L. c. 32, § 14(1)(*c*), the lump sum agreement provides that the lump sum payment "represents approximately 2.5 years of total incapacity benefits, from the date [Soucy's] position was eliminated."[7]

Soucy claims that although she sustained her work-related injury in 1997 and left government service in August, 2001, she remained a "member in service" eligible to receive accidental disability benefits pursuant to G. L. c. 32, § 7, by reason of her lump sum agreement and the provisions of G. L. c. 32, § 14(1)(*a*) and (*c*). Her argument fails for several reasons.

Soucy's argument ignores the basic and well-established principle of statutory construction that "statutory language itself is the principal source of insight into the legislative purpose." *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977), cited and quoted in *State Bd. of Retirement* v. *Boston Retirement Bd.*, 391 Mass. 92, 94 (1984), and *Leary* v. *Contributory Retirement Appeal Bd.*, 421 Mass. 344, 345 (1995). In considering the language of the controlling statutes, we give "tenses their ordinary significance." *Vest* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. at 193.

General Laws c. 32, § 14(1), directs itself to the rights *retained* by a "member in service." Although Soucy was a "member in service" when she sustained her 1997 injury, she became a "member inactive" when she left government service in August, 2001, while still able to perform the essential duties of her position. See *Boston Retirement Bd.* v. *McCormick*, 345 Mass. 692, 695 (1963); G. L. c. 32, § 3(1)(*a*)(i), (ii). As a "member inactive," she was not eligible to receive accidental disability retirement benefits under G. L. c. 32, § 7, and did not retain any of the rights conferred on "members in service" under G. L. c. 32, § 14(1)(*a*). Notwithstanding any determina-

---

[7]As pertinent to Soucy's lump sum agreement, G. L. c. 32, § 14(1)(*c*), reads:

> "Whenever such member receives an amount of lump sum settlement payable directly to him . . . in lieu of weekly payments, the period represented thereby shall, for the purpose of this section, be computed to begin on the date for which he last received regular compensation prior to such settlement . . . ."

tion made by the DIA concerning Soucy's ability to perform the essential duties of her position at the time she left government service, that determination was not binding on the board or the administrative magistrate, who found and concluded on substantial evidence that Soucy was able to perform the essential duties of her position in August, 2001. She was, therefore, a "member inactive" at the time of her application for workers' compensation benefits in August, 2001, and her application for accidental disability retirement benefits in March, 2002.

We see nothing in the language of G. L. c. 32, § 14(1)(*a*) or (*c*), that supports Soucy's claim that, three years after her departure from government service, the terms of her lump sum agreement retroactively bestowed upon her the status of a "member in service," a status that would make her eligible to apply for accidental disability retirement benefits pursuant to G. L. c. 32, § 7. When she left government service, she was no longer a "member in service."[8]

It follows from the findings of the administrative magistrate as supported by substantial evidence as well as our reading of the pertinent statutory provisions, that Soucy is not eligible for the accidental disability retirement benefits provided by G. L. c. 32, § 7.

*Judgment affirmed.*

---

[8]We do not view *DiNatale* v. *Contributory Retirement Appeal Bd.*, 39 Mass. App. Ct. 401 (1995), as requiring a different result. In the *DiNatale* case, the claimant settled her workers' compensation action by way of a lump sum agreement. This court held that for the purpose of calculating creditable service, the claimant "was entitled to retain membership in the retirement system pursuant to G. L. c. 32, § 14(1)," during the period over which the lump sum amount was allocated. *Id.* at 407. That case did not involve the claimant's right to receive accidental disability retirement benefits.